AMERICAN STEEL & WIRE CO. *v.* EDDY.

1. CORPORATIONS — STOCKHOLDERS — LIABILITY TO CREDITORS — ACTION TO ENFORCE.

> 2 Comp. Laws, § 7057, creating a liability on the part of stockholders of a corporation from which the capital stock has been withdrawn, authorizes suit by a creditor of the corporation against a holder of preferred stock.

2. SAME — IMPAIRMENT OF ASSETS — PAYING DIVIDENDS — GOOD FAITH.

> Under such statute the good faith of the corporation and its stockholders in paying and receiving dividends which in fact impair its capital stock is immaterial.

3. SAME—ISSUE OF IMPAIRMENT—EVIDENCE.

> On the issue of whether the capital stock was in fact impaired by the payment of dividends, the fact that the corporation held a guaranty that certain assets purchased by it should net a certain amount on a date subsequent to the payment of the dividends is not controlling, but the guaranty is merely a fact to be considered with other facts, such as the solvency of the guarantors, etc., in determining whether the capital was impaired.

4. SAME—OWNERSHIP OF STOCK—USING FUNDS OF ANOTHER.

> One who subscribed to and accepted preferred stock, acted as a director, and participated in the management of the affairs of the company and the declaration of dividends, and to whom the dividend complained of as an impairment of the corporation's assets was paid, must be deemed a stockholder, although he used the money of his sister in payment for the stock, and merely loaned it to the company; receiving the dividend as interest for his sister, and paying it to her.

Error to Bay; Shepard, J.  Submitted November 15, 1904.  (Docket No. 83.)  Decided December 7, 1904.

Petition by the American Steel & Wire Company, a judgment creditor of the Miller Hardware Company, against Selwyn Eddy, to enforce stockholder's liability.

There was judgment for defendant, and plaintiff brings error. Reversed.

*George E. & M. A. Nichols* (*Charles W. Nichols*, of counsel), for appellant.

*T. A. E. & J. C. Weadock*, for appellee.

HOOKER, J. The Miller Hardware Company, a corporation, began business in Bay City on February 17, 1894; being organized by the stockholders of a corporation theretofore existing, named W. H. Miller & Co., for the purpose of succeeding to the business of the latter. Its authorized capital was $70,000. On the day of its organization its stockholders' meeting adopted a resolution to purchase all of the assets and good will of W. H. Miller & Co., and to assume all of its liabilities, upon its guaranty that said assets should net to it (the Miller Hardware Company) at least $70,000 over and above the debts and liabilities—all of the accounts and bills receivable not collected on or before February 1, 1897, to be deemed uncollectible and valueless—and that the common stock of the new company should be issued to the stockholders of W. H. Miller & Co. in exchange for the stock certificates of that company, share for share. This was done.

On March 14, 1894, a by-law was adopted providing for the issue of $30,000 of preferred stock, and on April 2, 1894, a certificate for 125 shares was issued to Selwyn Eddy, in terms following, viz. :

"Incorporated under the laws of the State of Michigan, Act No. 232, Public Acts of 1885, as amended.
" No. 13.                              125 Shares.
    " The Miller Hardware Company, Bay City, Mich.
        " Preferred Stock bearing fixed dividends.
    " This certifies that Selwyn Eddy, of Bay City, Mich., is the owner of one hundred and twenty-five shares of ten dollars each, of the preferred stock of the Miller Hardware Company, fully paid and non-assessable. Transferable on the books of the company in person or by attorney on surrender of certificate.

"Fixed dividends will be paid on this stock at the rate of 8 per cent. per annum, payable semi-annually on the first day of April and October of each year, at the office of the Company. This stock is redeemable at the expiration of three years from the date hereof.

"In witness whereof the president and secretary have hereunto affixed their signatures and the corporate seal of the company, at Bay City aforesaid, on this second day of April, A. D. 1894.

"W. H. MILLER,
"President.
"EDWARD WILLIAMSON,
"Secretary."

Fifteen thousand dollars of such stock was issued to Selwyn Eddy, and a similar amount to John F. Eddy. A written guaranty to make the assets net to the Miller Hardware Company $70,000, in accordance with the resolution, was given by W. H. Miller & Co., upon which was indorsed the following, signed by the stockholders:

"In consideration of the foregoing the undersigned severally covenant and agree to and with said Miller Hardware Company to pay to and make up to it any deficiency or shortage of the sum of $70,000 in the amount realized by said Miller Hardware Company as aforesaid, in proportion to our respective holdings or interests in the stock of W. H. Miller & Company as set opposite our respective signatures."

The excess of assets over liabilities so transferred by W. H. Miller & Co., listing all accounts and bills receivable at face value, was $73,565.29; giving to the Miller Hardware Company, on the face of the inventory, $3,565.29 surplus over its capital stock of $70,000. This sum was charged in its books to W. H. Miller & Co., and carried as an asset during the period that the Miller Hardware Company did business, and it opened a surplus account of $7,000 upon its books. It is claimed that this was $3,434.71 in excess of the actual surplus, based on face values.

The Miller Hardware Company continued its business until June 1, 1897, when it made a voluntary assignment

for the benefit of its creditors. During the time it did business it paid annual dividends to its stockholders, of which defendant Selwyn Eddy received the sum of $3,600. It is said that this was 8 per cent. interest upon its stock, according to its terms. At the time of the assignment the plaintiff was a creditor of the Miller Hardware Company, and it ultimately realized from the assignee 55 per cent. of its claim. It afterwards obtained a judgment against the Miller Hardware Company for the remaining 45 per cent., and subsequently brought this action against Selwyn Eddy under the statute (2 Comp. Laws, § 7057) which provides:

" SEC. 21. If the capital stock of any such corporation shall be withdrawn and refunded to the stockholders before the payment of all the debts of the corporation for which such stock would have been liable, the stockholders of such corporation shall be jointly and severally liable to any creditor of such corporation, in an action founded on this statute, to the amount of the sum refunded to him or them respectively."

It has appealed from an adverse verdict and judgment.

Although there are many assignments of error, the questions discussed are thus stated by counsel for the appellee:

" The questions involved in this case relate principally to the refusal of the court to give certain of plaintiff's requests to charge, and the charge of the court, and to the admission of certain testimony. We think they may be summarized as follows:

" *First.* Should the court have directed a verdict for any amount against the defendant ?

" *Second.* Was it error to admit the testimony of the witness Pratt and the defendant Eddy as to their good faith and belief as to the condition of the company, and the charge of the court in that connection ?

" *Third.* Was it not the duty of the court to charge the jury that they should not, in determining the question as to whether there were any profits out of which dividends could be paid at the different periods, take into consideration any account which had rested for an unreasonable

length of time, or which had outlawed, or where the debtor had failed or become bankrupt, or where it was in suspense, etc.?

"*Fourth.* Was the error of the court in admitting the testimony offered on the part of the defense in relation to defendant's stock being taken as a loan, and that the dividends were paid to his sister, cured by the charge?

"*Fifth.* Were the remarks of the court in reference to certain testimony of witness Pratt reversible error?"

This cause was before us on a former occasion, when we held that the statute cited authorizes a suit against a stockholder by a creditor, and that a holder of preferred stock has no more right to receive a portion of the capital stock, to the injury of creditors, than a holder of common stock. *American Steel & Wire Co.* v. *Eddy*, 130 Mich. 266.

Counsel for the plaintiff assert that, while the secretary's annual statements of the financial condition show a net profit larger than the amount distributed, this was only made possible by retaining among the listed assets large amounts of worthless bills receivable and accounts which it was the duty of the company to charge off, and which were already lost, and therefore were not in fact available as assets.

Upon the other hand, counsel for the defendant insist that these items were included in the best of faith, especially as the guaranty did not become a liability until 1897, according to its terms, and that such dividends or interest, having been paid in good faith, cannot be called a withdrawal or refunding of the capital stock.

Counsel for the defendant were permitted to introduce testimony tending to show that the Eddys were asked to furnish this money as a loan, and that it was so furnished by them from the funds of their sister, who was the real owner of the stock or security, though kept in her brothers' names for convenience, and that she received the interest and dividends that were paid. Error is alleged upon the reception of this testimony. In his charge the court instructed the jury that this proof would not constitute a

defense, and it is urged that this cured the error of its admission, if it was erroneously received.

Upon the former hearing we held that those who deal with a corporation may rely on the preservation of the capital stock, and denied its right to divide it among the stockholders, as dividends, to the injury of creditors. We also indicated that this could not be done through a subterfuge, and that the statute (2 Comp. Laws, § 7057) applied to holders of preferred stock.

It does not become a question of good faith, either of the corporation or stockholder. Whenever it is satisfactorily proved that the assets of a corporation are so reduced as to impair the capital, the creditors have a right to follow them into the hands of the stockholders to whom they have been paid as dividends, and who must be held to hold such assets as a trust fund for the benefit of creditors. This is clearly indicated by our former opinion. It was therefore error for the court to instruct the jury that it was a question of good faith on the part of the stockholders. See former opinion, 130 Mich. 266, and other cases cited by counsel: 1 Cook on Stock, Stockh., and Corp. Law, § 548; *Ft. Payne Bank* v. *Alabama Sanitarium*, 103 Ala. 358, 370; 2 Clark & M. Priv. Corp. 1637; *Lexington Life, etc., Ins. Co.* v. *Page*, 17 B. Mon. (56 Ky.) 412, 416; *Grant* v. *Ross*, 100 Ky. 44; *Finn* v. *Brown*, 142 U. S. 56; *Main* v. *Mills*, 6 Bin. 98; *Flitcroft's Case*, L. R. 21 Ch. Div. 519; *In re Oxford Building and Investment Society*, L. R. 35 Ch. Div. 502; *Leed's Estate, Building and Investment Co.* v. *Shepherd*, L. R. 36 Ch. Div. 787; *Gratz* v. *Redd*, 4 B. Mon. (43 Ky.) 178; *Davenport* v. *Lines*, 72 Conn. 118; *Osgood* v. *Laytin*, *42 N. Y. (3 Keyes) 521.

It is urged that the capital stock was not impaired when these dividends were paid, because the corporation had a guaranty from the original company and its stockholders that these assets should net $70,000 in 1897. This guaranty was a part of these assets. But like all other assets, it may have been good or worthless. The question of the

impairment of the capital through the worthlessness of assets is not complicated by the guaranty, except that it furnished an additional asset to be considered. Certainly the fact that it postponed the day of the guarantor's liability could not justify the assumption that the original assets were good until that time should come, by reason of a real or imaginary duty of the company to the guarantors to carry them on the books and try to collect them. This is not a question of bookkeeping, merely, but of capital and assets, and actual values, and actual responsibility of guarantors. If, as contended, all were worthless and irresponsible, this capital was impaired, and should not have been paid out as dividends. These were questions of fact for the jury, and were submitted to them.

There remains the question of the evidence as to the ownership of the stocks, and the claim that the money paid for the preferred stock belonged to Eddy's sister. This testimony was admitted, and afterwards ruled out by the charge. Counsel for defendant maintain that this cured the error, if there was one. The substance of this claim is that although Eddy subscribed to and accepted preferred stock, and became and acted as a director, and participated as such in the management of the affairs of the company and the declaration of dividends, in reality he used the money of his sister, loaning it to the company, and received the dividend as interest for her, to whom he paid it. The authorities hold that one who loaned money, but took stock absolute upon its face, is liable as a stockholder. Counsel cite *Griswold* v. *Seligman*, 72 Mo. 110; *Baines* v. *Babcock*, 95 Cal. 581; *McDowall* v. *Sheehan*, 129 N. Y. 200.

The question before us differs from those considered in the above cases in this, viz.: Here the capital stock is said to have been paid out by way of dividends to a stockholder, and this is a proceeding to compel him to repay it. In those cases it was a question of his liability as a stockholder. We have no doubt that the money paid must be

considered as a purchase of stock, and not a loan; that Eddy, and not his sister, is the stockholder; and that he received the dividends. If they were in fact paid to her, it may be that the fund could be followed into her possession, and she compelled to refund, but that has not been attempted. The stockholder has received it as a stockholder, and the creditors may look to him for it, whether he paid it to another or not.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.