# CHICAGO, MILWAUKEE AND ST. PAUL RAILWAY COMPANY *v.* UNITED STATES.

## APPEAL FROM THE COURT OF CLAIMS.

No. 198. Submitted April 6, 1905.—Decided May 15, 1905.

The Postmaster General is given the power to arrange the railway routes upon which the mail is to be carried, and to adjust and readjust compensations, subject only to limitation of ascertaining the rate by average weight of mails.

There is nothing in § 4002, Rev. Stat., which requires the abrogation of a prior contract when an extension is made beyond the terminal of an established route or which precludes provision for the extension alone. While a contract may not be forced upon a railway it may accept and become bound by the action of the Post Office Department.

THE facts are stated in the opinion.

*Mr. George R. Peck, Mr. W. W. Dudley* and *Mr. L. T. Michener* for appellant.

*Mr. Assistant Attorney General Pradt* and *Mr. John Q. Thompson,* Special Attorney, for the United States.

MR. JUSTICE MCKENNA delivered the opinion of the court.

The appellant, a Wisconsin corporation, filed a petition in the Court of Claims, August 25, 1896, which it amended July 19, 1900, and by which it sought recovery from the United States of the sum of $9,101.08, for compensation for carrying the mails from Milwaukee, Wisconsin, to Republic, Michigan, and thence to Champion, Michigan.

The services were rendered by the Milwaukee and Northern Railroad Company. Appellant's ownership was derived from that company, as alleged in the petition, as follows:

"Your petitioner further avers that on the 30th day of September, 1890, it became the purchaser, and thereupon it

became the lawful owner, by assignment and transfer, of all of the capital stock of the said Milwaukee and Northern Railroad Company; that on the 1st day of October, 1890, the board of directors of the Milwaukee and Northern Railroad Company was reorganized by the election of persons who were either directors or officers of the petitioner, and the offices were filled by the election of persons who were officers of its company, with the solitary exception of the president of the Milwaukee and Northern Railroad Company; that from the 30th day of September, 1890, until the 26th day of June, 1893, that company operated the railroad as a separate organization and in the name of the Milwaukee and Northern Railroad Company; that on the 26th day of June, 1893, pursuant to a vote of the stockholders of the Milwaukee and Northern Railroad Company, the latter company executed a deed to the petitioner, whereby it conveyed to petitioner all its railroads, railways, rights of way, depot grants, tracks, bridges, etc., and also all other property and choses in action whatsoever, both real and personal, of the said Milwaukee and Northern Railroad Company, and all its rights, privileges and corporate franchises connected with or relating to such railroad, or to the construction, maintenance, use or operation of the same. And that thereafter, to wit, August 28, 1893, the Milwaukee and Northern Railroad Company held its last stockholders' meeting and its last directors' meeting, and since that time it has not exercised any corporate functions or powers, nor has it pretended to do anything of the sort."

The United States demurred to the petition on the grounds that (1) "The claim came to the claimant, if at all, by a pretended assignment which as to the United States was void; (2) the allegations of the amended petition did not state facts sufficient to constitute a claim against the United States." The demurrer was sustained and the petition dismissed, whereupon this appeal was taken.

The demurrer presented the questions of the validity of the assignment and the merits of the claim. We rest our decision

on the latter. We express no opinion of the validity of the assignment.

The Milwaukee and Northern Railroad ran from Milwaukee, Wisconsin, to Republic, Michigan, a distance of 255.37 miles. Under the authority given him by law, " to arrange the railway routes on which mail is carried," (section 3997 of the Revised Statutes of the United States), the Postmaster General designated the road from Milwaukee to Republic as Postal Route No. 139,016, and compensation was fixed for carrying the mails thereon. On February 4, 1890, the road was extended to Champion, Michigan, a distance of 8.89 miles. Provision was made for the extension by an order dated February 4, 1890, which directed that service should be extended from Republic to Champion, increasing distance 9.16 miles, less .27 miles, making a net increase of 8.89 miles, " in accordance with distance circular, and with the understanding that the rate of compensation on this extension will be adjusted in a subsequent order in accordance with law."

On December 1, 1890, the following order was made and directed to the general manager of the railroad:

"SIR: The compensation for the transportation of mails, etc., on route No. 139,016, between Milwaukee, Wis., and Champion, Mich., has been fixed from Sept. 23, 1890, to June 30, 1891, (unless otherwise ordered) under acts of March 3, 1873, July 12, 1876, and June 17, 1878, upon returns showing the amount and character of the service for thirty successive working days, commencing Sept. 23, 1890, at the rate of $35,022.37 per annum, being $132.53 per mile for 264.26 miles.

"From February 24 to Sept. 22, 1890, pay is allowed at the rate of $1,178.19 per annum, being $132.53 per mile for 8.89 miles extension between Republic and Champion, Mich.

"This adjustment is subject to future orders and to fines and deductions."

It will be observed that this order purports to fix the compensation on route 139,016 between Milwaukee and Champion. The dates designated are somewhat confusing. However,

in two days another order was issued and directed to the company, which reads as follows:

"SIR: The compensation for the transportation of mails, etc., on route No. 139,016, between Republic and Champion, Mich., has been fixed from February 24, 1890, to June 30, 1891 (unless otherwise ordered), under acts of March 3, 1873, July 12, 1876, and June 17, 1878, upon returns showing the amount and character of the service for thirty successive working days, commencing Sept. 23, 1890, at the rate of $1,178.19 per annum, being $132.53 per mile for 8.89 miles extension.

"This adjustment is subject to future orders and to fines and deductions."

The first order revoked the compensation for carrying the mails from Milwaukee to Republic, which had been fixed, and was manifestly a mistake. The second order was intended to correct the mistake and confine the adjustment to the extension from Republic to Champion.

The contention of appellant is that the Postmaster General had no power to issue the second order, but was required by section 4002 of the Revised Statutes of the United States to fix compensation for the whole route as extended. The appellant urges in support of the contention not only the provision of the section, but the practice and usage of the Post Office Department. Section 4002 is as follows:

"The Postmaster General is authorized and directed to readjust the compensation hereafter to be paid for the transportation of mails on railroad routes upon the conditions and at the rates hereinafter mentioned:

"First. That the mails shall be conveyed with due frequency and speed; and that sufficient and suitable room, fixtures, and furniture, in a car or apartment properly lighted and warmed, shall be provided for route agents to accompany and distribute the mails.

"Second. That the pay per mile per annum shall not exceed the following rates, namely: On routes carrying their whole

length an average weight of mails per day of two hundred pounds, fifty dollars; five hundred pounds, seventy-five dollars; one thousand pounds, one hundred dollars; one thousand five hundred pounds, one hundred and twenty-five dollars; two thousand pounds, one hundred and fifty dollars; three thousand five hundred pounds, one hundred and seventy-five dollars; five thousand pounds, two hundred dollars; and twenty-five dollars additional for every additional two thousand pounds, the average weight to be ascertained, in every case, by the actual weighing of the mails for such a number of successive working days, not less than thirty, at such times, after June thirtieth, eighteen hundred and seventy-three, and not less frequently than once in every four years, and the result to be stated and verified in such form and manner as the Postmaster General may direct."

The section does not sustain the appellant's contention. The Postmaster General is given the power to arrange the railway routes upon which the mail is to be carried, and to adjust and readjust compensation. The orders of December 1 and December 3, respectively, reserved this power, and the only limitation on its exercise, expressed in Section 4002, is as to the manner of ascertaining the rate, which is to be by the average weight of the mails. There is nothing in the section which requires the abrogation of prior contracts when an extension is made beyond the terminal of an established route or precludes provisions for the extension alone. A contract may not be forced upon a railway. It may accept, however, and become bound by the action of the Post Office Department. *Eastern Railroad* v. *United States*, 129 U. S. 391. The record does not show any protest against the order of December 3. Its terms were unmistakable, and, as counsel for the Government observes, "it may be justly inferred" that the railroad company "viewed the order of December 3 in the same light and as having the same force and effect as intended by the postal authorities."

*Judgment affirmed.*