### ELLSWORTH v. LYONS.

(Circuit Court of Appeals, Sixth Circuit. July 13, 1910.)

No. 2,017.

1. BANKRUPTCY (§ 467*)—REFEREE'S FINDINGS—CONCLUSIVENESS.
   The finding of a referee in bankruptcy that bankrupt was solvent at a particular time will be accepted on appeal.
   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 467.*
   Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. CORPORATIONS (§ 545*)—RIGHT TO PREFER CREDITORS.
   A corporation can secure one class of stockholders over another.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2170–2175; Dec. Dig. § 545.*]

3. CORPORATIONS (§ 545*)—CONTRACTS WITH STOCKHOLDERS—VALIDITY.
   In the absence of express statutory authority therefor, a contract between a corporation and a stockholder, by which the latter is to receive the par value or any part of his stock before all corporate debts are paid, is contrary to public policy, and void.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2170–2175; Dec. Dig. § 545.*]

4. CORPORATIONS (§ 156*)—PREFERRED STOCKHOLDERS—DIVIDENDS—SOURCE.
   Under Comp. Laws, Mich. 1897, § 7073, providing for the payment of dividends on preferred before common stock, they are payable only from net earnings.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 581–583, 596–603; Dec. Dig. § 156.*]

5. CORPORATIONS (§ 156*)—PREFERRED STOCKHOLDERS—NATURE OF RIGHTS.
   A holder of preferred stock under Comp. Laws, Mich. 1897, § 7073, is a stockholder, and not a creditor.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 581–583, 596–603; Dec. Dig. § 156.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. Corporations (§ 545*)—Preferred Stock—Validity of Security.
 A corporation cannot as against its creditors secure the retirement of preferred stock issued under Comp. Laws, Mich. 1897, § 7073, by appropriating assets otherwise available to creditors, as by carrying an insurance policy out of the corporate assets, though creditors did not extend credit on the faith of the policy being a corporate asset.

 [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2170–2175; Dec. Dig. § 545.*]

Appeal from the District Court of the United States for the Eastern District of Michigan.

In the matter of the Lansing Veneered Door Company, bankrupt. From an order of the District Court reversing an order of the referee directing certain payment, John E. Ellsworth appeals adversely to T. Rogers Lyons, trustee of the estate. Order affirmed.

B. B. Selling, for appellant.
W. C. Brown, for appellee.

Before WARRINGTON and KNAPPEN, Circuit Judges, and SANFORD, District Judge.

KNAPPEN, Circuit Judge. The appellant, on behalf of himself and other holders of preferred stock of the Lansing Veneered Door Company (hereafter referred to as the "Door Company"), petitioned the referee for an order directing the payment to him and such other stockholders of the proceeds of a certain policy of insurance upon the life of Charles Broas, taken out by the bankrupt company for the purpose of securing the payment of the dividends upon said preferred stock and the ultimate redemption of the same at par. The referee granted the petition. The District Court, upon review of the referee's order, reversed the same and dismissed the petition. The important facts are these:

The Door Company was originally incorporated in 1896. It had then no preferred stock. In 1902 its capital stock was increased to $50,000; $30,000 being common and $20,000 preferred. This action was taken under the provisions of section 7073 of the Compiled Laws of Michigan hereafter referred to. The full $20,000 of preferred stock was subscribed by Charles Broas, secretary of the company, who had charge of the floating of the same. Section 1 of article 4 of the company's by-laws provides that:

"Three thousand shares shall be known as common stock, fully paid and non-assessable, with power of voting at stockholders' meeting, one vote for each share. Two thousand shares shall be known as preferred stock, drawing six per cent. interest, payable semiannually, and redeemable in nineteen hundred and twelve."

Sections 2 and 3 are as follows:

"Sec. 2. The preferred stock shall be retired in full at par on the first day of June, 1912. For the purpose of providing a fund for the redemption and retirement of said preferred stock there has been placed upon the life of Charles Broas, secretary, treasurer and general manager, twenty thousand dollars ($20,000) of life insurance in the Mutual Benefit Insurance Company of Newark, N. J. Said insurance is taken on the ten year endowment plan and the full amount is payable directly to this company on the death of the

insured, or at the expiration of ten years should the insured be then living.

"Sec. 3. After providing for the payment of dividends on the preferred stock and before any dividends shall be declared or paid upon the common stock there shall be set aside from the net earnings of the business of the company each year and paid to the Mutual Benefit Insurance Company of Newark, N. J., at the time when such premium becomes due a sum sufficient to pay such premiums, less the dividend paid on such policy. The moneys received ($20,000) by this company at the expiration of the endowment period, *or by the death of the insured,* shall be used for no other purpose whatsoever than the retirement of the preferred stock. It being specially provided that in case of the death of the insured the moneys due ($20,000) shall be used only for the purchase of preferred stock at par."

Section 4 provides that whenever the surplus in the hands of the company exceeds the amount necessary to pay the next year's premium on the insurance policy, together with the amount required to meet interest on the preferred stock for the next two years, "such surplus and such surplus only may be used in the payment of dividends on the common stock, or may, by a two-thirds vote of the owners of the common stock, be used in the purchase of preferred stock."

Section 5 requires the by-laws referred to, together with section 7073 of the Michigan statutes above mentioned, conferring authority for the issue of preferred stock, to be printed upon the certificates thereof, and forbids amendment or repeal of the by-laws without the consent of all the holders of preferred stock and of two-thirds of the holders of common stock. The by-laws, together with the statute referred to, were in fact printed upon the certificates of stock when issued, to which were attached semiannual coupons representing dividends for the 10-year period commencing October 1, 1902, each coupon containing this recital: "The same being six months' dividends on $500.00 preferred stock." The 10-year endowment policy was in fact taken out as contemplated, and the holders of preferred stock purchased the same in reliance thereon as security for such preferred holdings. Previous to February 18, 1904, the company paid in cash, out of its assets, premiums amounting to $4,408.89. After that date it paid only the sum of $22.49, which was interest due on a deferred payment maturing February 18, 1904. Later premiums were met through loans upon the policy. Proceedings in bankruptcy were begun against the company August 18, 1906. On November 23, 1906, the trustee in bankruptcy surrendered the policy to the insurance company, receiving therefor $2,310.71, as its surrender value. The referee concluded, apparently with considerable difficulty, that the company was solvent upon February 18, 1904, without taking into account the insurance policy. He also found that the Door Company had no creditors at the time of the adjudication in bankruptcy or at the time of the filing of the petition therein, who were such upon February 18, 1904, and that there was no evidence that any credit was extended by any creditor of the company "upon the basis or supposition that the said life insurance policy was an asset of said corporation for the payment of its debts." It also appeared that a further issue of preferred stock was made in 1906. This fact, however, does not become material in the view we take of the case.

The sole question presented is whether, as against the creditors of an insolvent manufacturing corporation organized under the laws of

Michigan, the preference attempted to be given stockholders of the character in question can be sustained as to assets set apart while the company is still solvent for the security of said holdings, but still held by the company under an attempted trust in favor of such holders. We say this because, in the first place, we must accept the conclusion of the referee that the company was solvent when the insurance premiums in question were paid. In the next place, no question of the lawfulness of the payment of the dividends actually paid is here involved, but only of the application of funds now on hand to the ultimate redemption of the preferred holdings. Moreover, the fund representing the proceeds of insurance was actually paid from the assets of the company, thus reducing to that extent the amount available to creditors and rendering it immaterial whether paid from earnings of the company or not. And, finally, the title to the securities representing the fund so paid from the assets of the company was still held by the latter at the time bankruptcy intervened. That the terms of the by-laws and stock certificates are intended to create the preference claimed is clear. The important question is whether the company had power to give such preference. The law is well settled that a corporation may lawfully give security to one class of stockholders over another class. Warren v. King, 108 U. S. 389, 2 Sup. Ct. 789, 27 L. Ed. 769; Hamlin v. Toledo, St. L. & K. C. R. Co. (6th Circuit) 78 Fed. 664, 670, 24 C. C. A. 271, 36 L. R. A. 826; Continental Trust Co. v. Toledo, St. L. & K. C. R. Co. (C. C., N. D. Ohio) 86 Fed. 929, 949; Toledo, St. L. & K. C. R. Co. v. Continental Trust Co. (6th Circuit) 95 Fed. 497, 531, 36 C. C. A. 155. It is equally well settled that a contract between a corporation and a stockholder by which the latter is to receive the par value or any part of his stock before all corporate debts are paid is contrary to public policy, and void. Warren v. King, 108 U. S. 389, 396, 2 Sup. Ct. 789, 27 L. Ed. 769; Hamlin v. Toledo, St. L. & K. C. R. Co. (6th Circuit) 78 Fed. 664, 670, 671–672, 24 C. C. A. 271, 36 L. R. A. 826; Guaranty Trust Co. v. Galveston City R. R. Co. (5th Circuit) 107 Fed. 311, 46 C. C. A. 305; American Steel & Wire Co. v. Eddy, 130 Mich. 266, 269, 89 N. W. 952; s. c. 138 Mich. 403, 407–410, 101 N. W. 578; Clark v. E. C. Clark Machine Co., 151 Mich. 416, 424, 115 N. W. 416; Cook on Stocks and Stockholders (3d Ed.) § 271.

Appellant contends that the holders of this so-called preferred stock were not in reality stockholders at all, but were essentially creditors, and that the corporation could lawfully secure to them the repayment of loans made as such. It may be conceded that if the preferred holders in question were in reality creditors purely, and not stockholders, it was competent to secure the repayment of the money so advanced. The status of these holders must be determined largely by reference to the statute creating that status.

Section 7073 of the Michigan Compiled Laws of 1897 (which was added in 1893 by way of amendment to the general act providing for the incorporation of manufacturing companies, and under which the amendment of the articles of association of the Door Company and the issue of the preferred interests in question were had) confers power upon such manufacturing company "to create and issue certificates for

two kinds of stock, viz.: General or common stock, and preferred stock, which preferred stock shall at no time exceed two-thirds of the actual capital paid in, and shall be subject to redemption at par at a certain time to be fixed by the by-laws of said corporation, and to be expressed in the certificates therefor." It is further provided that:

"The holder of such preferred stock shall be entitled to a fixed dividend, payable quarterly, half-yearly or yearly, which said dividend shall be cumulative, payable at the time expressed in said certificate, not to exceed eight per cent. per annum, before any dividend shall be set apart or paid on the common stock."

It is further provided that:

"In no event shall the holder of such preferred stock be individually or personally liable for the debts or other liabilities of said corporation, excepting debts for labor."

It is further provided that both preferred and common stockholders shall participate in the election of the board of directors except when otherwise provided in the articles of association, with the express requirement, however, of such participation by the preferred stockholders whenever the common stock shall be impaired to the extent of 10 per cent. thereof or whenever any dividend due on the preferred stock shall remain unpaid for 60 days. The statute contains this further express provision:

"If for any reason said corporation shall cease business or become insolvent, then after the payment of all liabilities and debts, the remainder of the assets of said corporation shall be applied, first in payment in full of all preferred stock and then unpaid dividends due thereon, and the balance divided pro rata, share and share alike, among the holders of the common stock."

It is thus seen, first, that holders of the class here in question are throughout the statute treated as stockholders and not as creditors; second, that such preferred stock is not entitled to be withdrawn by the holder, but is only "subject to redemption," the provision in the by-laws for such right of withdrawal being thus without statutory authority; third, the return upon the stock is characterized as dividends and not as interest, and, while this dividend is not in terms payable only from the net earnings, such is its legal effect (Lockhart v. Van Alstyne, 31 Mich. 75, 18 Am. Rep. 156; Warren v. King, supra; Hamlin v. Toledo, St. L. & K. C. R. Co., supra); fourth, participation by the preferred stockholders in the management and control of the corporate affairs is provided for, not only in case of impairment of common stock or failure to pay dividends on preferred stock, but at all times, as the articles of association contain no provision to the contrary; fifth, no priority is allowed to preferred stockholders over creditors. On the contrary, the priority is awarded only as to common stockholders, and then only (in case of insolvency and by the express terms of the statute) "after the payment of all liabilities and debts." That the holder of preferred stock under this Michigan statute is a stockholder merely, and not a creditor, seems clear. We find nothing to the contrary in the obiter remark of Justice Grant in Continental Paint Co. v. Secretary of State, 128 Mich., at pages 624–625, 87 N. W., at page 901. On the other hand, the decisions of the Supreme Court of

Michigan in American Steel & Wire Co. v. Eddy, 130 Mich. 266, 89 N. W. 952, and 138 Mich. 403, 407, 408, 409–410, 101 N. W. 578, are peculiarly in point. In that case suit was brought to recover from a holder of preferred stock issued under section 7073 dividends received in alleged impairment of the capital stock, section 7057 permitting such recovery upon withdrawal or refunding to stockholders of any part of the capital stock before payment of all the debts of the corporation. The claim was made by the defendant that the subscription to the stock was merely a loan, and so intended. It was held that the money paid must be considered as a purchase of stock, and not a loan, and that one who loans money, but takes stock absolute upon its face, is liable as a stockholder. It was further held that notwithstanding the provisions of section 7073, exempting the holder of such preferred stock from liability for the debts and other liabilities of the corporation (excepting debts for labor), he was still liable for dividends received which were not paid out of the earnings; the preferred stockholder under section 7073 being held to have no greater right to a dividend from the capital stock of an insolvent corporation than any other stockholder until the debts are paid. The cases of Warren v. King and Hamlin v. Toledo, St. L. & K. C. R. Co., supra, are also well in point. In the former case the certificates declared that "the preferred stock is to be and remain a fixed claim upon the property of the company after its indebtedness," with provisions for semiannual payment of interest from net earnings in advance of participation therein by the common stock. In deciding that these preferred stockholders had no claim on the property superior to that of creditors under debts contracted by the company subsequently to the issue of the preferred stock, and that their only valid claim was one to a priority over the holders of common stock, the court said of the security in question:

"But it is stock, and part of the capital stock, with the characteristics of capital stock. One of such characteristics is that no part of the property of a corporation shall go to reimburse the principal of capital stock until all the debts of the corporation have been paid. It would require the clearest language to admit of the application of a different rule to any capital stock."

In Hamlin v. Toledo, St. L. & K. C. R. Co., supra, this court speaking through Judge (now Mr. Justice) Lurton, said:

"There is a wide difference between the relation of the creditor and the stockholder to the corporate property. One cannot well be a creditor as respects creditors proper, and a stockholder by virtue of a certificate evidencing his contribution to the capital stock of the corporation. Stock is capital, and a stock certificate but evidences that the holder has ventured his means as a part of the capital. It is the fixed characteristic of capital stock that no part of it can be withdrawn for the purpose of reimbursing the principal of the capital stock until the debts of the corporation are paid. These principles are elementary."

And again:

"If the purpose in providing for these peculiar shares was to arrange matters so that, under any circumstances, a part of the principal of the stock might be withdrawn before the full discharge of all corporate debts, the device would be contrary to the nature of capital stock, opposed to public policy, and void as to creditors affected thereby."

And still again:

"We will not presume that their purpose (that of the preferred stockholders) was to adopt a device by which they might withdraw their contribution to the capital stock and leave creditors unpaid. If they intended that, they have not made it plain, and, if it was plain, the device would be invalid as to creditors."

The holdings involved in that case, and held to be stock, had no voting power. As has already appeared, the fact that only subsequent creditors are affected is immaterial. In Clark v. E. C. Clark Machine Co., supra, a holder of corporate stock sold the same to the corporation, taking security therefor. There was no claim that the corporation was then insolvent. The good faith of all the parties was conceded. No creditors existing at the time of the stock purchase, if there were any, complained of the transfer. All the creditors who complained were subsequent creditors, who gave credit with the mortgage on file in the proper office. In rejecting the security as invalid, the Supreme Court of Michigan said:

"We are compelled to hold that the assessable stock and the assets of a corporation constitute a trust fund, not only for the benefit of existing, but also for future, creditors (American Steel & Wire Co. v. Eddy, 130 Mich. 266 [89 N. W. 952]; Peninsular Savings Bank v. Stove Polish Co., 105 Mich. 535 [63 N. W. 514]; Upton v. Tribilcock, 91 U. S. 45 [23 L. Ed. 203]), and that the assets of a corporation cannot be used by it in the purchase of its outstanding stock to the exclusion of subsequent creditors."

The fact that the stock involved in the Clark Case was common stock does not affect its application to the point to which the case is cited.

We are not to be understood as holding that a corporation cannot secure a creditor for money loaned by way of insurance upon the life of its manager paid for out of the assets of the company. What we do hold is that it is not lawful for a corporation, as against its creditors, to secure the retirement of preferred stock issued under the Michigan statute by an appropriation of the assets of the company otherwise available to creditors; and that it was clearly the intention of the parties concerned, plainly evidenced by the references to and reliance upon the Michigan statute, to make the holders thereunder stockholders and not creditors. It is true that the agreement in question attempted to secure the preferred stockholders, but that, as shown by the authorities cited, is incompetent as against creditors prior or subsequent, and is the vice of the situation. It can make no difference that creditors are not shown to have extended credit upon the supposition that the life insurance policy was a corporate asset for the payment of debts. On the other hand, although such proposition is perhaps not material, there is no showing that creditors extended credit with actual knowledge of the fact that the life insurance held by the corporation, and purchased with its assets, was pledged for the retirement of the preferred stock. None of the cases cited by appellant are in our judgment inconsistent with the conclusion we have reached. Thus W. C. & Phil. R. Co. v. Jackson, 77 Pa. 321, and Williams v. Parker, 136 Mass. 204, involved only preferences between different classes of stockholders; Fitch v. Wetherbee, 110 Ill. 475, involved no question of the respective rights of stockholders and creditors; Atwood v. Dumas,

149 Mass. 167, 21 N. E. 236, 3 L. R. A. 416, involved the liability of a co-operative bank to trustee process to reach the funds of a member which were by statute withdrawable by the member as a matter of right and as a deposit. The case there presented is similar to that involved in Wilson v. Parvin (6th Circuit) 119 Fed. 652, 659, 56 C. C. A. 268. Burt v. Rattle, 31 Ohio St. 116, differed from the case here presented in the important particulars that the statute there in question expressly authorized the corporation to guarantee not only dividends but actual payment at a fixed time; the holder of the preferred stock was not entitled to vote under any circumstances, nor was he liable for debts under any circumstances; while stockholders were by express provision of the constitution liable to creditors. The preferred holder in that case was held not to be a stockholder, the court saying:

"A stockholder in such a corporation in Ohio without individual liability is simply an impossibility. To declare a party not individually liable is prima facie to declare him not a stockholder."

The court was compelled, in order to sustain the constitutionality of the statute, to hold that the so-called preferred stockholders were intended to be creditors merely. In Heller v. Marine Bank, 89 Md. 602, 43 Atl. 800, 45 L. R. A. 438, 73 Am. St. Rep. 212, the preferred stockholder was by statute given priority over "any subsequently created mortgage, or other incumbrance." The case of Totten v. Tison, 54 Ga. 139, was decided upon its own peculiar state of facts, the court recognizing the ordinary rule which gives preferred stockholders priority only over common stockholders, but holding that the so-called preferred stockholders were not preferred stockholders but creditors. The case of Little v. Garabrant, 90 Hun, 404, 35 N. Y. Supp. 689, contains nothing contrary to the views we have expressed.

The conclusion we have reached is that the District Court properly held that the preferred stockholders were not entitled to the proceeds of the life insurance policy in preference to the rights of creditors.

The order of the District Court is accordingly affirmed.