## ELKO LAMOILLE POWER CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6399.

Circuit Court of Appeals, Ninth Circuit.

June 15, 1931.

Milton B. Badt and James Dysart, both of Elko, Nev., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, J. P. Jackson, and Norman D. Keller, Sp. Asst. to Atty. Gen. (C. M. Charest, General Counsel, and William E. Davis, Sp. Atty., Bureau of Internal Revenue, both of counsel), of Washington, D. C., for respondent.

Before WILBUR and SAWTELLE, Circuit Judges, and NETERER, District Judge.

NETERER, District Judge.

The petitioner is a Nevada corporation engaged in power and light business at Elko, Nev. In 1924 a bond issue of $100,000 was authorized; $90,000 was sold, of which $15,-000 was thereafter retired. It later became necessary to secure further funds, and it was concluded to issue preferred stock instead of selling available bonds. In 1925 $80,000 preferred stock, bearing 7 per cent. dividends, payable semiannually, preferred as to income and assets, callable after three years

at 110, was authorized. The stock certificates contained the following provision: "The dividends on the preferred stock shall be cumulative and shall be payable before any dividends on the common stock shall be paid or set apart, so that if in any year dividends amounting to seven per cent. shall not have been paid thereon, the deficiency shall be payable before any dividends shall be paid upon or set apart for the common stock. * * * In the event of any liquidation or dissolution or winding up * * * of the corporation, the holders of the preferred stock shall be entitled to be paid in full, both the par value of their shares and the unpaid dividends accrued thereon, before any amount shall be paid to the holders of the common stock, and after the payment to the holders of the preferred stock of its par value and the unpaid accrued dividends thereon, the remaining assets and funds shall be divided and paid to the holders of the common stock according to their respective shares. * * *. The preferred stock shall be without voting power, said right being restricted to the common stock. Redeemable after 3 years at 110."

In its tax return the petitioner treated the issue of preferred stock as an indebtedness and deducted the dividends from its return as interest. The only issue before the court is whether the preferred stockholders can be treated as creditors.

Section 234 (a) (2) of the Revenue Act of 1926 (26 USCA § 986 (a) (2) provides that to determine the net income of a corporation there may be deducted 'from the gross income all interest paid on indebtedness. Article 564 of Treasury Regulations 69, promulgated under section 1101 of the Act of 1926 (26 USCA § 1245) provides that "so-called interest on preferred stock, which is in reality a dividend thereon, cannot be deducted in computing net income." [1]

■■■ The distinction between common stockholders and preferred stockholders may be said to be that the common stockholder is an owner of the enterprise in the proportion that his stock bears to the entire stock, and entitled to participate in the management,

profit, and ultimate assets of the corporation. A stock certificate is evidence of the shares owned. Edwards v. Wabash Ry. Co. (C. C. A.) 264 F. 610.

■■■ A preferred stockholder is a mode by which a corporation obtains funds for its enterprise without borrowing money or contracting a debt, the stockholder being preferred as to principal and interest, but having no voice in the management. State ex rel. Thompson v. C. & C. R. R. Co., 16 S. C. 524. It differs only from other stocks in that it is given preference and has no voting right. A preferred stockholder is not a creditor of the company. Scott v. Baltimore & O. R. Co., 93 Md. 475, 49 A. 327; Lockhart v. Van Alstyne, 31 Mich. 79, 18 Am. Rep. 156. The preferred stock was sold by the president and secretary of the petitioner, acting as salesmen, on representations that the holders could return it at any time and receive the amount paid, together with accumulated dividends. Upon refusal of the revenue officers to recognize the preferred stock as a debt, and the dividends thereon as interest as upon a loan, a resolution was passed in 1928 by the board of directors which recites:

"Whereas, the Department of the Treasury of the United States of America, in reaching a conclusion as to the nature of the certificates, has held the oral representations made to the purchaser as insufficient to establish the liability of this corporation to redeem the same upon presentation and, through such holding, has determined that the said certificates are in fact preferred stock, and the payments thereon dividends and not interest;

"Now, therefore, be it hereby resolved:

"1. That the corporation hereby ratifies, approves and confirms the oral representations made by this corporation to the purchasers of the said so-called certificates of preferred stock, to the effect that they may be redeemed at any time upon presentation and demand at par and accrued interest.

"2. That these resolutions take effect as of the dates of the respective sales of any of such preferred stock.

"3. That such certificates of preferred stock be deemed and are hereby declared to be certificates of indebtedness of this corporation, payable upon presentation and demand, at par and accrued interest, and that this corporation acknowledges itself obligated accordingly."

On the books, the preferred "stock was carried as preferred stockholders' interest ac-

---

[1] Revenue Act of 1918, c. 18, 40 Stat. 1057, 1077, § 234(a) (2); Regulations 45, art. 564; Revenue Act of 1921, c. 136, 42 Stat. 227, 254, § 234(a) (2); Regulations 62, art. 564; Revenue Act of 1924, c. 234, 43 Stat. 253, 283, § 234(a) (2), 26 USCA § 986(a) (2); Regulations 65, art. 564; Revenue Act of 1926, c. 27, 44 Stat. 9, 41, § 234(a) (2), 26 USCA § 986(a) (2); Regulations 69, art. 564; Revenue Act of 1928, c. 852, 45 Stat. 791, 799, § 23(b), 26 USCA § 2023(b); Regulations 74, art. 141. Heiner v. Colonial Trust Co., 275 U. S. 232, 48 S. Ct. 65, 72 L. Ed. 256; Brewster v. Gage, 280 U. S. 327, 337, 50 S. Ct. 115, 74 L. Ed. 457.

count." Neither the resolution passed long after the sale of the preferred stock nor the method of bookkeeping have any probative value; nor have the representations of the president and secretary as stock salesmen. They had no power to bind the corporation, except as conferred by law or by-law, and there is no law or by-law cited to the court. Tax liability is predicated upon express provisions of the revenue laws. Gulf Oil Corp. v. Lewellyn, 248 U. S. 71, 39 S. Ct. 35, 63 L. Ed. 133; Kadow v. Paul, 274 U. S. 175, 47 S. Ct. 561, 71 L. Ed. 982. The assets of a corporation are a trust fund, and the directors may not arbitrarily change the status of stockholders into that of general creditors. Spencer v. Smith (C. C. A.) 201 F. 647; Armstrong v. Union Trust & Savings Bank (C. C. A.) 248 F. 268. The status of the tax liability between the corporation and the United States was fixed on the issuance of the preferred stock. The agreement of the salesmen officers was a collateral agreement between the officers and the stockholders. The evidence presented establishes that the stock was purchased by the stockholders upon the representation that they could bring it back at any time and get their money and dividends. Several testified that they considered it a loan. This evidence can have no probative value. The sale was effected with a collateral understanding that they would be redeemed on demand. "The rights of the holders of preferred stock in this case must be determined by the language of the stock certificate." Warren v. King, 108 U. S. 389, 396, 2 S. Ct. 789, 795, 27 L. Ed. 769.

Arthur R. Jones Syndicate v. Commissioner of Internal Revenue (C. C. A.) 23 F. (2d) 833, relied upon by the petitioner, is clearly distinguishable. In that case the corporation had issued preferred and common stock. It needed funds, and in an attempt to negotiate for additional funds 14 per cent. interest was exacted. The company was advised that the rate was usurious and might be pleaded. The court says: "In order to avoid any head-on conflict with the Illinois usury law * * * Jones revamped his stock set-up and provided for first preferred, second preferred, and common certificates. * * * The articles of the syndicate provided that the first preferred shares were to be redeemed 'on July 1, 1922, by payment of the par value thereof plus a dividend at the rate of 14 per cent. per annum from the date hereof to the date of such payment.' "

There were other stipulations not here applicable. The preferred stock was a direct obligation with a definite date for payment. In the instant case the preferred stock could, *at the option of the corporation,* be redeemed within three years at 110. There was, however, no obligation to redeem. In the Jones Syndicate there was an express provision to pay at five years. It was in effect a bond payable in five years.

The Supreme Court in Warren v. King, 108 U. S. 389, 2 S. Ct. 789, 27 L. Ed. 769, in passing upon the rights of stockholders, creditors, and preferred stockholders, held (syllabus): "That the preferred stockholders had no claim on the property superior to that of creditors under debts contracted by the company subsequently to the issue of the preferred stock, and that their only valid claim was one to a priority over the holders of common stock." And, at page 399 of 108 U. S., 2 S. Ct. 789, 797: "There is nothing in the certificate which clothes them with a single attribute of a creditor, while it specially gives them, as stockholders, an equal interest with the common stockholders in the excess of net earnings in each year, after paying therefrom 7 per cent. on each share of stock, preferred and common."

See, also, Hamlin v. Toledo, St. L. & K. C. R. Co. (C. C. A.) 78 F. 664, 36 L. R. A. 826; Ellsworth v. Lyons (C. C. A.) 181 F. 59; Spencer v. Smith (C. C. A.) 201 F. 647; Armstrong v. Union Trust & Savings Bank (C. C. A.) 248 F. 268.

Necessities may permit evidence aliunde of the contract to unfold the real character of the transaction. Mere necessities of the borrower who pays a usurious rate of interest makes it necessary for courts to admit his oral testimony to dispute his written word. Houghton v. Burden, 228 U. S. 161, 33 S. Ct. 491, 57 L. Ed. 780. But in the instant case there is no evidence of any necesssity; surplus bonds unissued; no suggestion of usurious demands, or usury law to be avoided; nothing whatever to indicate anything out of the ordinary and usual relation in the issuance of the preferred stock; nor an issue of preferred stock payable at a definite time.

Affirmed.