## UNITED STATES v. ATLANTIC COAST LINE R. CO.

(District Court, E. D. North Carolina. July 9, 1913.)

### No. 23.

1. POST OFFICE (§ 22*)—RAILROAD AS CARRIER OF MAILS—NATURE OF SERVICE.
   A railroad company, carrying the mails under contract, is not in respect to such service a common carrier, but is a public agency of the United States, employed in performing a governmental function.
   [Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 40, 41; Dec. Dig. § 22.*]

2. POST OFFICE (§ 21*)—RAILROAD AS CARRIER OF MAILS—REMEDY FOR BREACH OF CONTRACT.
   Rev. St. § 3962 (U. S. Comp. St. 1901, p. 2704), which authorizes the Postmaster General to make deductions from the pay of contractors for failure to perform service according to contract, and to impose fines upon them for other delinquencies, provides a summary remedy to the United States for breaches of such contracts, which is exclusive; and where such a deduction has been made from the pay of a railroad company under a contract for transporting over its road employés, equipment, and mails in postal cars, "because of the destruction of mail and equipment" in a wreck, the United States cannot also maintain an action in the courts for damages, neither the government nor the company ·being under any liability to the owners of mail destroyed or lost.
   [Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 27–39; Dec. Dig. § 21.*]

3. POST OFFICE (§ 21*)—RAILROAD AS CARRIER OF MAIL—LIABILITY FOR MAIL MATTER LOST—ACTION BY UNITED STATES AS BAILEE.
   A contract, by a railroad company with the Postmaster General to transport over its road cars containing mail matter in the custody of employés of the postal service contemplates· only the carriage of matter lawfully mailable, and the company cannot be held liable in an action for· breach of the contract, brought by the United States as bailee, for the value of a package lost containing valuable articles, which was mailed in a foreign country in violation of the convention between that country and the United States, and the contents of which package were not known to the government or the railroad company.
   [Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 27–39; Dec. Dig. § 21.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. BAILMENT (§ 21*)—ACTION BY BAILEE AGAINST THIRD PERSONS—DEFENSES.**

Where a bailee sues for the benefit of the bailor for the conversion or loss of the bailed property by another, his right of action and extent of recovery are measured by those of the party for whose benefit he sues, and the action is open to any defense which might be made against the bailor; and this is especially true where the statutes of the state require actions to be prosecuted by the real party in interest.

[Ed. Note.—For other cases, see Bailment, Cent. Dig. §§ 91–102; Dec. Dig. § 21.*]

**5. UNITED STATES (§ 129*)—ACTION FOR BENEFIT OF PRIVATE PERSONS—DEFENSES.**

Such rule is equally applicable to actions by the United States as formal plaintiff, but for the benefit of private persons.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 117; Dec. Dig. § 129.*]

**6. BAILMENT (§ 3*)—RESPONSIBILITY OF BAILEE—DECEPTION BY BAILOR.**

One cannot be made bailee of an article as to the nature or value of which, by the conduct of the bailor, in violation of the terms of the contract, he was misled and deceived.

[Ed. Note.—For other cases, see Bailment, Cent. Dig. §§ 18–20; Dec. Dig. § 3.*]

At Law. Action by the United States against the Atlantic Coast Line Railroad Company. Judgment for defendant.

See, also, 189 Fed. 779.

H. F. Seawell, Dist. Atty., of Carthage, N. C., and Chapman W. Maupin, Sp. Atty., of Washington, D. C., for the United States.

George B. Elliott, Chas. A. Townes, and Davis & Davis, all of Wilmington, N. C., for defendant.

CONNOR, District Judge. Action for damages for loss of mail equipment and registered mail matter, while in transit over defendant's line of railroad.

Plaintiff declared: (1) For destruction of mail pouches and other equipment, of the value of $135.85, the property of plaintiff, alleged to have been placed in the possession of defendant pursuant to a contract of carriage and destroyed by the negligence of defendant's employés. (2) For destruction or loss of certain diamonds, of the value of $6,208.27, and other registered mail matter, of the value of $2.50, of which plaintiff was the bailee as registered mail matter, while in transit over defendant's road pursuant to a contract for carriage. (3) For that defendant negligently permitted its employés and others to convert to their own use certain diamonds, while in the possession of defendant under a contract for carriage.

Issues, arising upon the pleadings and set out in the record, were submitted to and answered by the jury, whereupon a stipulation was made between the parties that the judge upon the verdict, the facts found by the court from the depositions and exhibits, and the admissions in the pleadings, should render such judgment as, in his opinion, was in accordance with law; each party saving all exceptions set out in the record. The court finds the following facts:

Defendant operates a line of railroad connecting, at Weldon, N. C.,

with other lines of road, from the north, to the South Carolina state line, and connecting with other lines of road to the south. Pursuant to the provisions of acts of Congress, plaintiff, by its Postmaster General, on February 13, 1900, entered into a contract with defendant, which was in force and effect at all times thereafter to and including April 18, 1904, whereby defendant contracted to carry for plaintiff such foreign and domestic mail and mail equipment as was delivered to it in accordance with the acts of Congress and the regulations of the Post Office Department, over the line of said road from Weldon, N. C., to the South Carolina line, known and designated as "Mail Route No. 118,002," at a stipulated price per mile. On said 18th day of April, 1904, there existed an authorized United States mail service, known and designated as the "Washington and Charleston Railway Post Office," extending from Washington, D. C., to Charleston, S. C., and thence south, of which said line defendant's railroad formed a part.

On and prior to said date there was existing and in force a postal convention, entered into between the United States of America and the republic of France, whereby the former accepted and carried registered mail, and other mail matter, originating in the territory of the latter, and ending in or passing through the territory of the former. By the terms and provisions of said convention certain articles, including diamonds and other jewels, having a salable value, were prohibited from being placed in or sent through registered mail originating in France and coming to or passing through the United States. On or about the 8th day of April, 1904, the firm of Rousselon Frères & Co., residents of Paris, France, placed in a sealed package, addressed to Garcia Corrugedo y Sabrino, at Havana, Cuba, 32 cut diamonds, and placed the said sealed package and registered same in the post office at Paris, France, for transmission through the mail, via the United States of America, to the addressees at Havana. Said diamonds were sent to the addressees on consignment for sale for account of the owners. Said package, containing said diamonds, was so placed in the post office, and registered, in violation of the laws and postal regulations of the republic of France and of the terms and provisions of the postal convention concluded between the United States and the republic of France. Said package, in a pouch with other foreign mail, was brought from Paris to Havre by rail, and from Havre to New York in a steamship, as a part of the foreign mail, placed in the mail car, attached to the train of the Pennsylvania Railroad at Jersey City, and carried to Washington, D. C. It was there placed in the mail car attached to defendant's train No. 35, going south, April 18, 1904, over the route known as the "Washington and Charleston Railway Post Office." The mail pouch containing said registered package was placed in the mail car in charge of the railway postal clerks and other employés of plaintiff, to whom were assigned the usual powers and duties prescribed by law and the postal regulations for such clerks and employés.

On the night of April 18, 1904, defendant's train No. 35 collided with defendant's train No. 8, standing on defendant's track at Lu-

cama, a station on defendant's line of road in the state of North Carolina. The collision was caused by the negligence of defendant's employés in charge of train No. 8, and not by the negligence of the employés in charge of train No. 35. There was no evidence tending to show any defect in the construction or condition of defendant's track, engine, or equipment, headlight, brakes, or other ways and appliances; nor was there any evidence tending to show any negligence on the part of defendant in the selection of its employés in charge of either of its trains. The negligence of the employés in charge of train No. 8 consisted in a failure to obey the rules prescribed for the safety of trains approaching another train standing on the track. The mail car attached to train No. 35 was destroyed by fire, originating, by reason of said collision, in a freight car, being a part of train No. 8. The mail pouches and mail equipment in the car were destroyed. Neither the postal authorities nor employés in the post office at Paris, nor the postal authorities nor employés of the United States mail service, nor those of the defendant corporation, had any knowledge, notice, or information that the registered package mailed by Rousselon Frères & Co. in Paris contained diamonds, nor did they have any notice or knowledge of the character or value of the contents of said package, nor of the registered package mailed at Boston, Mass. The only marks or words on said packages when placed in the mail, were the names of the addressees and point of destination. The postal clerks, route agents, and other employés of the government, one of whom was injured in said collision, were carried by another of defendant's trains, immediately after the collision, to Fayetteville, N. C., a station over defendant's road, 70 miles distant from Lucama. None of them returned to Lucama.

On the day following the collision, while the servants of defendant were engaged in removing the débris and ashes from the track, a person not connected with nor in the employment of defendant picked up from the ashes near the track a diamond. He did not know what it was—kept it two or three weeks before learning its character or value. Another person, not in the employment of defendant, found in the ashes two diamonds, not knowing what they were or their value. During that week or ten days following several persons, raking among and sifting the ashes, found several diamonds at the place where the mail car was burned. They were carried to a jeweller, living in a town some six miles distant, who informed such persons of their character and value. The postal clerks and other employés of the government had no notice of the finding of the diamonds.

About 22 diamonds were found and sold by persons searching for them in the ashes. The safe transmission of the diamonds was insured by a French insurance company, which paid to the owners their full value. There was, in addition to the package containing the diamonds, a package in the registered mail, containing a medallion of the value of $2.50, mailed at Boston, Mass., addressed to Mrs. Garris, Smoke, S. C., which was destroyed by fire. The plaintiff paid to the addressee the value of the medallion. There is no evidence that plain-

tiff has paid Rousselon Frères & Co. or any one else the value of the diamonds, or that any claim has been made therefor.

Pursuant to the provisions of section 3962 of the Revised Statutes (U. S. Comp. St. 1901, p. 2704, 5 Fed. Stat. Anno. 893) the Postmaster General on October 2, 1906, deducted from the amount due defendant for mail service under its contract, "because of the destruction of mail and equipment in the wreck of train 35, near Lucama, April 18, 1904, $500." It does not appear whether on October 2, 1906, plaintiff had notice that the diamonds were in the mail car. This action was instituted on the 9th day of September, 1907.

[1] Defendant resists a recovery upon several grounds, all of which are urged in the oral argument and are set forth in the brief of counsel. It is insisted that no action will lie against defendant for the loss of the diamonds and other mail matter, or the pouches, by reason of the negligence of its employés, for that the defendant was neither a common carrier, nor a carrier for hire, but an instrumentality employed by the government in the performance of a governmental duty. In Atchison, T. & S. F. Ry. Co. v. U. S., 225 U. S. 640, 649, 32 Sup. Ct. 702, 703 (56 L. Ed. 1236), it is said:

"The Company, in carrying the mails, was not hauling freight, nor was it acting as a common carrier, with corresponding rights and liabilities; but in this respect it was serving as an agency of government, and as much subject to the laws and regulations as every other branch of the post office."

The law has been uniformly so held by the state and federal courts. In Boston Insurance Co. v. Chicago, R. I. & P. Ry. Co., 118 Iowa, 423, 92 N. W. 88, 59 L. R. A. 796, registered mail matter was destroyed by fire caused by the negligence of the employés of the company in control of the train to which the mail car was attached, and other employés operating a switch. The plaintiff insurance company, having paid the owners the value of the registered mail matter, sued the railroad company. The court, in a well-considered opinion, held that:

"A railroad company, carrying mail under contract with the United States government, owes no duty to the sender of a particular registered package of mail, which will give him a right of action in case the package is destroyed through the negligence of the company's servants."

The question was discussed in Bankers' Mutual Casualty Co. v. Minn., St. Paul, etc., Ry. Co., 117 Fed. 434, 54 C. C. A. 608, 65 L. R. A. 397 (C. C. A. Eighth Circuit), and in Central Railroad v. Lampley, 76 Ala. 357, 52 Am. Rep. 334. It may be treated as settled that the defendant was not, by virtue of its contract with the Postmaster General a common carrier. It is said:

"It neither receives nor undertakes to deliver any of the letters or packages carried over its line. They are received by the government or its agents, which undertakes to deliver them at their destination. The railway company is not, as we understand it, a bailee of the matter carried by it; that is, a bailee in the ordinary sense. Neither the sender of the letter nor the government delivers mail to the railway company. It is at all times in charge of the officers and agents of the government. The railway company simply has charge of the car in which the mails are carried, and its responsibility in respect thereto is to the general government." Boston Ins. Co. v. Chicago, etc. Ry. Co., supra.

In the opinion, from which quotation has been made, it is said:

"Letters and packages are inclosed in government mail bags, secured by locks provided by the government, taken in charge by agents of the government * * * in cars of such character as the general government requires, handled by government agents in these cars, and by them delivered to other agents of the government for transmission or delivery to the addressees. Mailable matter is at all times in charge of government appointees or contractors. Railroads, as carriers of the mail, have no knowledge of the contents of the mail sacks, * * * except to obey the instructions of the Post Office Department. In so far as they handle the mail, they are simply instrumentalities of the government for the performance of a public function, and are neither common nor private carriers for the government or the individual."

This language accurately describes the conditions disclosed by the evidence in this record. The Postmaster General, pursuant to authority vested in him by Congress, made the contract with defendant to carry the mail between the points named in the complaint for the price set out. Every statute, and all regulations of the Post Office Department, having a legal relation to the subject-matter of the contract, are to be read into the contract for the purpose of interpreting it, ascertaining the intention of the parties, and fixing their relative duties, rights and liabilities.

[2] It is well to note, in this connection, that by section 3962, R. S. (5 Fed. Stat. Anno. 893), it is provided that:

"The Postmaster General may make deductions from the pay of contractors, for failure to perform service according to contract, and impose fines upon them for other delinquencies."

This statute is not now referred to for the purpose of discussing the defense of accord and satisfaction, relied upon by defendant, but as throwing light upon the interpretation of the contract, and ascertaining the intention of the parties in respect to liability of defendant, and the remedy for breach of its obligation. It has been held by the Court of Claims in Otis v. United States, 24 Ct. Cl. 72, that:

"The service to be performed [in the carriage of the mails] is of such a character that a provision [such as that made by this section] is essential to the successful performance of the most important function incident to the executive branch of the Government. If the Post Office Department were subjected to the ordinary remedy for a violated contract, the measure of protection would be incommensurate to the wrong inflicted, and the mail service might thereby be impaired in that efficiency required by public policy."

It is further said:

"If this court were to so construe the law that these defendants could only recover for a violation of contracts according to the usual mode of assessing damages, the postal service might be stripped of that efficiency required by public necessity." Supra.

In Parker v. U. S., 26 Ct. Cl. 357, Nott, J., discussing the provisions of section 3962 (U. S. Comp. St. 1901, p. 2704) says:

"No man is obliged to be a mail contractor against his will; and the statute is operative against no man until by voluntarily entering into a contract for performing a mail transportation service he expressly or impliedly agrees to submit the differences which may arise to the arbitrament of the Postmaster General. The only effect of the statute is that it requires the Post Office Department to exact this agreement from all mail carriers, and that

it takes such contracts to this extent out of the ordinary rules of law which regulate penalties and liquidated damages. * * * The vast area of the Post Office system, its complexity of routes, the remoteness and distance of its operations from the seat of the government, require that a summary method of dealing with its innumerable contractors and subcontractors shall exist, though its administration may often involve instances of individual injustice."

It is insisted on the part of defendant that, in construing the contract made by it with the Postmaster General for carrying the mail, the fact must be kept in view that it was well known to both parties that the government was not liable for the loss of the mail to the owner, nor was the defendant liable to such owner; that in performing the service the government was discharging a public governmental function, imposed by the federal Constitution and acts of Congress, and that defendant was an agency employed to aid the government in the performance of such duty; that it should be assumed that the rate of compensation for such service was fixed by the parties, in view of the law relieving both from such liability; that the power conferred by the statute upon the Postmaster General to impose fines for failure to carry the mail and other delinquency on the part of defendant was intended to be the sole and exclusive remedy reserved by the government for such default or delinquency in carrying the mail; that, in fixing the amount of the fine, it was the duty of the Postmaster General to take into consideration the extent of the loss sustained by the government and the degree of blame attaching to the contractor. It is insisted that this view is sustained by the action of the Postmaster General in the instant case—the fine is imposed "because of the destruction of mail and equipment in the wreck of train 35, near Lucama, April 18, 1904." The amount imposed is $500, whereas the value of the equipment, being the only property in the car owned by the government, is but $135.

A careful examination of section 3962, in the light of the construction put upon it by the Court of Claims, will aid us in ascertaining the intention of the parties respecting the extent of the liability of the defendant for defaults or "failure to perform the service according to contract," and the method of its enforcement. It will be observed that the power to fix and make deductions is conferred upon the Postmaster General, subject to the limitation that he may deduct the price of the trip in all cases where the trip is not made, and not exceeding three times the price, if the failure be occasioned by the fault of the contractor or carrier, and "he may impose fines for other delinquencies." It is held that:

"The power to impose a fine is one which is not known to the common law and cannot be enlarged by inference or intendment. Its remedy must be found in the specific contract which authorizes it." Parker v. U. S., 26 Ct. Cl. 359.

Unless the Postmaster General manifestly abuses, or exceeds, the power conferred upon him, his action is final, and not subject to review by the courts. Allman v. U. S., 131 U. S. 31, 9 Sup. Ct. 632, 33 L. Ed. 51. It must be kept in mind that this provision, for making deductions for default and delinquencies, is not a penalty imposed for breach of a public duty by a public officer. The railroad company,

save in certain exceptional cases, within which defendant does not come, is under no legal obligation to carry the mail; such duty as it assumes in that respect is the result of, and fixed by, the terms of its voluntary contract. Eastern Railroad Co. v. U. S., 129 U. S. 391, 9 Sup. Ct. 320, 32 L. Ed. 730. "A contract may not be forced upon the railway. It may accept, however, and become bound by the action of the Post Office Department." Chicago, M. & St. P. Ry. Co. v. U. S., 198 U. S. 385, 25 Sup. Ct. 665, 49 L. Ed. 1094. The reason assigned by the Court of Claims, in the cases cited, why the government requires that the contract shall vest in the Postmaster General the power to make the deduction and impose the fine, enforcing it summarily, is manifestly correct.

The same reason is found in contracts, more or less analogous, between private citizens, inducing them to fix a stipulated amount, or provide for some method of arbitration for fixing the amount, to be paid by the party in default as liquidated damages—and to withhold such amount from the contract price—that the subject-matter of the contract is of such a nature that the actual damages sustained by a breach could not be readily proved and recovered; hence, in such cases, the courts incline to the view that the sum named, either in the contract, or by the tribunal agreed upon for fixing it, is intended as a liquidation of recoverable damages. The reasons upon which this well-settled rule of construction is based apply, with more than usual force, in the instant case. It would be very difficult for the government to prove in an action at law what amount of damage it had sustained by reason of the failure to carry the mail, or for its destruction. The contractor not being liable to the owner of the mail matter, either for delay in its transmission or for its destruction, the injury sustained by the government by reason of such default would be of uncertain measure and amount. To subject the government to the necessity for bringing civil actions for the many defaults incident to the carriage of mail, more or less serious in their results, would afford a measure of protection "incommensurate to the wrong inflicted, and the mail service might thereby be impaired in that efficiency required by public policy."

Again, if the carrier was subjected to a civil action for every default or delinquency in the performance of the service, the cost incurred in defending such suits would be very great, and out of proportion to the compensation received or the amount involved. It is, as said by the Court of Claims, manifest that both parties to the contract agreed upon the method prescribed by section 3962 for fixing and enforcing the amount to be paid by the carrier for such defaults. Among the advantages accruing to the carrier, compensating for the advantage given the government by permitting its Postmaster General to finally, without notice or hearing, fix the amount to be deducted, is the limitation placed upon the amount which he may deduct. A reasonable construction of the contract leads to the conclusion that it was the intention of the parties that the method prescribed for fixing the amount to be paid by the carrier for defaults and delinquencies excludes the government from suing in the courts for such breaches.

To hold otherwise would subject the carrier to the payment of such amount as the Postmaster General, in view of the circumstances under which the default occurred, should fix, and, in addition thereto, be called upon to answer in a civil action for the same default. This result squares neither with a sense of justice, nor with well-settled rules of construction of contracts.

If it be suggested that, in many cases, the value of the mail matter destroyed, or the damages sustained by the owners or addressees of mail matter, exceeds the limit imposed upon the Postmaster General, an obvious answer is found in the fact that, neither the government nor the contractor being liable to such owner or addressee, such damages could not have been within the contemplation of the parties in making the contract. It will not do to say that the government, in fixing the terms of the contract upon which the compensation depended, reserved the right to fix the amount of damages sustained by it, and, in addition thereto, to prosecute a civil action to recover damages for the benefit of the owners of the mail for which neither the government nor the carrier was liable. In this case the government expressly differentiates, in its complaint, the cause of action for the loss of its own property, the pouches and mail equipment, and the cause of action in which it demands a recovery as bailee for the owners of the diamonds. To hold that the government, under the same contract, may demand for the destruction of the mail equipment $500, and recover, in this action, the value of the equipment, $135.85, does not, to say the least, harmonize with a sense of either natural or juristic justice. It is manifest that such construction has not heretofore been put upon these contracts by the Postmaster General.

The court may properly take notice of the fact, of which statistics are carefully compiled, that frequent railroad collisions, derailments, and wrecks occur, in which mail equipment and mail matter is destroyed. The record of the Court of Claims, and doubtless of the Post Office Department, show that the provisions of section 3962 are frequently enforced against mail contractors. This fact very persuasively leads to the conclusion that heretofore the department has construed the contract and the statute as restricting the remedy of the government to the exercise of the power conferred upon the Postmaster General. The language used by the Postmaster General, in this instance, in making the deduction from the compensation due defendant for carrying the mail, "Because of the destruction of mail and equipment in the wreck of train 35, near Lucama, on April 18, 1904, $500," tends strongly to show that he took into consideration the circumstances, conditions, value of equipment, etc., in fixing the amount, and understood that, by the terms of the contract, such amount was deducted in full settlement of all claims and demands for "the destruction of the mail and equipment." The time, 2 years and 6 months, elapsing between the destruction of the mail and the assessment of the penalty, would indicate that the Postmaster General had been notified, at the time of assessing the property, that the diamonds were in the mail car. This view is further strengthened by the fact that, although the collision occurred April 18, 1904, and the deduction was made

October 2, 1906, no other demand was made on the defendant, or action begun, until September 9, 1907. In Robertson v. Downing, 127 U. S. 607, 8 Sup. Ct. 1328, 32 L. Ed. 269, it is said:

"The regulation of a department of the government is not, of course, to control the construction of an act of Congress, when its meaning is plain. But when there has been a long acquiescence in a regulation, and by it rights of parties for many years have been determined and adjusted, it is not to be disregarded without the most cogent and persuasive reasons."

And to this effect the authorities are numerous and uniform. Is it not a fair and reasonable conclusion that, in fixing the rate of compensation for carrying the mail, regard was had to the provisions of section 3962 and the construction theretofore put upon it by the department in fixing the extent of the carrier's liability for defaults and delinquencies, and that such construction was in the contemplation of both parties to the contract.

[3] This view applies with equal force to the claim for the value of the diamonds, unless a distinction may be found in the second cause of action, where plaintiff sues as the bailee of the owners of the diamonds. In stating this cause of action, plaintiff alleges that:

"As bailee of the owners of the diamonds, it placed the registered package in the possession of defendant for carriage, and that, by the negligence of the employés, it was destroyed."

National Surety Co. v. United States, 129 Fed. 70, 63 C. C. A. 512, was an action by the defendant in error against plaintiff in error for the breach of a bond given by a letter carrier upon which the plaintiff in error was surety. The mail carrier received, for delivery, letters containing money and rifled them of their contents. The court held that the act of the carrier was a breach of the condition of the bond, for which the government could maintain an action, and that it was entitled to recover the money taken from the letters; that this right was not affected by the fact that the government was not liable to the owner of the money and had not accounted to him for it. Conceding that the language of the condition of the bond was sufficient to cover the default of the carrier, the serious question presented was in respect to the amount of damage which the government was entitled to recover. Judge Sanborn, writing for the Circuit Court of Appeals of the Eighth Circuit, rested the right to recover the full amount of the money taken from the letters upon the theory that the government was the bailee of the owner, and entitled to recover against a wrongdoer the full value of the property taken by the carrier, and that this right was not dependent upon the liability of the government to answer over to the owner. Whether the language used in the opinion, in respect to the relation which the government bore to the sender or sendee of the mail, is in harmony with other decided cases, cited herein, may be open to debate. The opinion of Judge Sanborn was followed by Judge Morris in U. S. v. Am. Surety Co. (C. C.) 161 Fed. 149, and by the Circuit Court of Appeals for the Fourth Circuit in the same case, 163 Fed. 228, 89 C. C. A. 658. In the opinions in these cases no authority is cited other than Judge Sanborn's opinion. They were evidently decided upon the authority of that case.

In United States v. Am. Surety Co. (C. C.) 155 Fed. 941, in which Judge Sanborn adhered to the opinion expressed by him in the case reported as U. S. v. Downing, 129 Fed. 90, 63 C. C. A. 532, it would seem that the principle upon which the conclusion rested was not very clear to his mind. The amounts recovered in each of the cases cited were small and within the penalty of the bonds. No statute is cited authorizing suit, on such a bond, by the owner of the letter—or money. It is not clear whether the condition of the bond is within the reasoning of Mr. Justice Harlan in Howard v. United States, 184 U. S. 676, 22 Sup. Ct. 543, 46 L. Ed. 754. There is ample authority for the position that a bailee may sue a third person for the conversion or destruction of the property bailed, and recover its full value for the benefit or use of the owner. The principle has been discussed and applied to the relation between the Postmaster General and the owner of property destroyed in the mail. The Winkfield, L. R. Prob. Div. 42. The facts in that case are not analogous to, nor is the opinion decisive of, the instant case, which is so peculiar in many of its phases that it is very difficult to find authority directly, or approximately, in point. The quest for analogies, likewise, presents difficulties.

There is, however, one aspect of the case in which it would seem a decision can be rested upon a ground sustained by a current of decisions more or less analogous, and based upon principles of natural justice and a fair construction of the contract entered into between the government and the defendant for alleged breach of which the action is brought. As we have seen, the defendant is not, in respect to its contractual obligation to carry the mail, a common carrier, and is not, therefore, an insurer of its safe carriage and delivery. No question of public policy can be invoked to control the court in placing a fair, reasonable construction on the language of the contract, or to disturb the application of rules of interpretation founded upon reason and justice. The primary duty of a court in construing a contract is to ascertain and effectuate the intention of the parties. This must be done by examining the language used and looking to the relation which the parties bear to each other and to the subject-matter of the contract. Another well-settled rule is that, for the breach of an executory contract, such damages will be awarded the injured party as proximately flow therefrom and were within the contemplation of the parties at the time the contract was made.

In respect to the contract between the Postmaster General and the defendant, it will be well to keep in mind the fact that the plaintiff, in the performance of a public governmental duty or function, for the purpose of securing the service of the defendant in carrying, over its road, cars in which were placed, in the custody and under the control of its own officers, agents, or employés, mail matter in pouches or bags of its own selection. These pouches are locked or otherwise secured by its own appliances, and the possession of the key is retained by its agents and officers. So far as appears, or is relevant to this case, no employé, servant, or agent of defendant either knew, or was entitled to know, or had any duty imposed upon them to inquire, in respect to the contents of the letters or packages or the pouches in

which they were placed. For the purpose of extending the mail facilities of the government to its own citizens, and those of other nations or countries, the plaintiff entered into treaties or conventions with the governments of such other countries whereby it undertook to receive and carry mail matter by the use of the facilities employed for that purpose. Pursuant to this policy, a convention was entered into between plaintiff and the government of the French republic, by the terms of which, so far as relevant to this case, it undertook to receive and carry for the citizens of the French republic mail matter, subject to certain terms and prohibitions. Article 2 of the convention provides:

"The stipulations of this convention extend to letters, postal cards, both single and with reply paid, printed papers of every kind, commercial papers and samples of merchandise, originating in one of the countries of the Union and intended for another of those countries."

It is further provided that:

"Packets of samples of merchandise may not contain any article having a salable value."

When the defendant, therefore, undertook by contract to carry the mail in the manner set forth at a fixed price per mile, it must be taken that the term "mail" or "mailable matter" referred to such mail or mail matter as, under the laws of the United States, or the postal regulations made by the Postmaster General, or the conventions entered into with the governments of other countries, was entitled to be put in the mail. It was this mail matter which defendant undertook to carry. So, when a citizen of this country, or, as in the instant case, of the republic of France, desired, by paying the rates prescribed by law, to send either open or "registered" mail matter, the right to do so was subject to the limitations and prohibitions contained in the law, regulations, or conventions of the government of which they are citizens. They must be deemed to have notice of such public laws and regulations. Caha v. U. S., 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed. 415; State v. So. Ry., 141 N. C. 846, 54 S. E. 294.

[4] Recognizing the fact that neither the owners of the diamonds nor the insurance company, which paid their value to such owner, had a right of action against the defendant for their loss, the plaintiff seeks to recover their value as the bailee of the owners. It is manifest that such recovery, if made, will be for the benefit, the use of, or, as is sometimes said, in trust for, the owners. It is only upon this theory that the right to recover against a wrongdoer the full value of the property bailed can be maintained. The general rule undoubtedly is that damages recoverable for trespass or conversion are limited to the actual injury sustained by the plaintiff. It seems to have been held that the right of the bailee to recover from a third party the full value of the property was, by the ancient common law, based upon the fact that the bailee was answerable over to the owner for the property or its value. Notes to Harker v. Dement, 9 Gill (Md.) 7, 52 Am. Dec. 670. Judge Sanborn, in United States v. Am. Surety Co. (C. C.) 155 Fed. 941, was evidently of that opinion, and found difficulty in

sustaining the conclusion that the government could recover of the surety on the bond the full amount taken by the carrier, when it was not liable therefor to the bailor. After referring to the authorities sustaining the proposition that the reason why the bailee is entitled to recover full damages against one who converts the property bailed is that he is bound to restore the property to the general owner or stand responsible to him for the full value, he says:

"In this case I am inclined to think that, although the regulations limit the liability of the government to $25, yet, if the government recovers the full value of the package stolen, it will be liable for the balance, if the Court of Claims has jurisdiction to allow a claim for such balance. * * * It seems to admit of no question that, if the government collects money from one person, which is equitably due to another, an implied contract arises to restore or repay the money to the person so entitled."

The right of action against the trespasser, or one who converts the property, was given the bailee by the ancient common law because he was answerable over to the owner, and for the further reason that, in possessory actions for the recovery of chattels, the owner, not having, during the continuance of the bailment, a right to the possession, could not sue for their conversion. For an interesting history of the common law on the subject, see Pollock & Maitland, History of the English Law, vol. 2, c. 4, § 7, p. 169; Holmes, Common Law, 175. Mr. Bevin says:

"Both the bailor and bailee may maintain an action against a stranger for an injury to, or conversion of, the bailment—the bailor, by virtue of his general property; the bailee, by virtue of his special property and actual possession. This right of action is limited by the interest of the bailee in the bailment." 2 Neg. 733.

He gives an interesting review of the development of the law on the subject:

"Whatever conflict may be found in the decided cases, and the reasons assigned by the courts and writers, it seems to be settled, at this time, that the bailee, although not liable to the owner, may sue a third party, who has either injured or converted the property, and recover its full value or the full amount of the damage sustained. The damage sustained to his special property he recovers for his own use, and the remainder for the use, or in trust for, the owner." Bevin, Neg. 737, citing White v. Webb, 15 Conn. 302.

This view is sustained by the best-considered cases, and must, of necessity, be the basis upon which a party is entitled to recover compensatory damages in excess of an injury sustained by him. Schley v. Lyon, 6 Ga. 530; Moran v. Portland Packet Co., 35 Me. 55; Mizner v. Frazier, 40 Mich. 592, 29 Am. Rep. 562; Chamberlain v. West, 37 Minn. 54, 33 N. W. 114; Woodman v. Nottingham, 49 N. H. 387, 6 Am. Rep. 526; Russell v. Butterfield, 21 Wend. (N. Y.) 300. Considered from this viewpoint, it may be regarded as elementary that, when a plaintiff sues in a representative capacity, and for the benefit of another—that is, as trustee for the cestui que trust, or, as here, the bailee for the bailor—his right of action and extent of recovery must be confined to the right of the party for whose benefit he sues; that any and all defenses which would be open to the defendant in an action by the real party in interest, would be likewise open

to him in the action by the representative. The Code of Civil Procedure of North Carolina requires that every action must be prosecuted by "the real party in interest." C. C. P. 177. So it is held, by the courts of this state, that one, not a party to a contract, but who is a beneficiary thereof, may maintain an action in his own name on the contract. Gorrell v. Water Supply Co., 124 N. C. 328, 32 S. E. 720, 46 L. R. A. 513, 70 Am. St. Rep. 598.

While, for the reasons set out in the cases hereinbefore cited, the owners of the diamonds cannot sue defendant for their loss, it is insisted, not only that the same result be accomplished, by means of this action, but the defendant may be deprived of defenses which would be available to it, if the action was brought and prosecuted by the real party in interest. This contention does not harmonize with either principles of law or justice. That the plaintiff is suing for the use and benefit of the owners of the diamonds, and not for the purpose of recovering from defendant damages which it has not and cannot sustain, is manifest from the language of the complaint. It sues "as the bailee of the owners of the diamonds." It would not comport with the dignity of the sovereign to attribute to it a purpose to recover of this defendant the large sum demanded for the purpose of covering it into its treasury and fail to pay it over to the real parties in interest. This is emphasized by the fact that the plaintiff, before bringing this action, demanded and received the penalty assessed against defendant for the injury by it by reason of this default or delinquency in the performance of its contractual duty.

[5] That, in an action prosecuted by the government for the benefit of a private citizen, the same defenses are open to defendant as if prosecuted by the citizen, is settled by a number of decisions of the federal courts. In United States v. Bebee, 127 U. S. 338, 8 Sup. Ct. 1083, 32 L. Ed. 121, Mr. Justice Lamar says:

"It has not been unusual for this court, for the purposes of justice, to determine the real parties to a suit by reference, not merely to the names in which it is brought, but to the facts of the case as they appear on the record." In re Ayers, 123 U. S. 443, 8 Sup. Ct. 164, 31 L. Ed. 216, and other cases cited in the opinion. "When the government is a mere formal complainant in a suit, not for the purpose of asserting any public right or protecting any public interest, title, or property, but merely to form a conduit through which one private person can conduct litigation against another private person, a court of equity will not be restrained from administering the equities existing between the real parties by any exemption of the government designed for the protection of the rights of the United States alone. The mere use of its name in a suit for the benefit of a private suitor cannot extend its immunity as a sovereign government to said private suitor, whereby he can avoid and escape the scrutiny of a court of equity into the matters pleaded against him by the other party."

He cites, with approval, Miller v. State, 38 Ala. 600, in which the defendant, in a suit where the state, though a nominal party, had no real interest in the litigation, was permitted to plead the statute of limitations; Moody v. Fleming, 4 Ga. 115, 48 Am. Dec. 210.

In French Republic v. Saratoga Vichy Co., 191 U. S. 427, 24 Sup. Ct. 145, 48 L. Ed. 247, Mr. Justice Brown states the principle involved:

"Where the government is suing for the use and benefit of an individual, or for the prosecution of a private and proprietary, instead of a public or

governmental, right, it is clear that it is not entitled to the exemption of nullus tempus, and that the ordinary rule applies in full force." United States v. Des Moines Ry. Co., 84 Fed. 40, 28 C. C. A. 267.

Applying the principle to this record, the case comes to this: The owners of the diamonds, citizens of the French republic, by virtue of the right conferred to send mailable matter through the French and American postal system, in violation of the terms upon which such right is conferred, place in the post office a sealed package, containing what purports to be mailable matter, but which in fact contains valuable jewels, having a salable value of some $6,000, addressed to their consignee in Havana for sale on their account. The fact that the sealed package contains this nonmailable matter is concealed from the postal authorities, not by any positive false declaration, but by being so addressed and sealed as to give no intimation of its contents. In view of the public law and provisions of the convention between the two countries, knowledge of which is imputed to all who use the mail, it is immaterial how the result was brought about. It is sufficient that nonmailable matter was put in the mail for transmission over the postal system. Assuming, pro hac vice, that by putting the package in the mail and paying the postage the owners of the diamonds established the relation between plaintiff and themselves of bailor and bailee, for carriage, and that, under the contract between the plaintiff and the defendant, the latter became the bailee of the former for the benefit of the owner, the question is presented: What duty or liability is imposed upon the defendant in respect to the diamonds? It must be kept in mind that neither the plaintiff nor the defendant are common carriers or insurers. The relation of bailor and bailee is of contractual origin. It is created by an offer and acceptance, and supported by a valuable consideration. In entering into the contract, certain duties are imposed upon both parties, based upon principles of fair dealing and common honesty.

[6] One cannot be made a bailee of an article as to which, by the conduct of the bailor, in violation of the terms of the contract, he was misled and deceived. This is true, without regard to the relation of the parties or the degree of care imposed by the law. This elementary principle has been announced and enforced from the time of the earliest decided cases, and applied to contracts entered into by common carriers, who are under obligation to carry for the public. Lord Mansfield said:

"The delivery, indeed, must be free from artifice or misrepresentation, made with a view to deceive the carrier; for honesty and good faith are as requisite in this as in every other contract, and consequently any concealment or fraudulent device in the delivery of goods will discharge the carrier." Gibson v. Paynton, 4 Burr. 2301.

When the carrier has given notice that he will not be liable for parcels of value, unless they are entered and a proportionate premium paid, this will be equivalent to a special acceptance, and render it incumbent on the owner to disclose the value, in order to make the carrier responsible. The effect of the notice will be, when no special entry is made, to entitle the carrier to consider the parcel as of an ordinary nature, and not falling within that description of goods for

which he refuses to be liable without a compliance with the terms of the notice, and in such cases the holding out as an ordinary risk what is in truth an extraordinary one will be considered as a legal fraud, and the legal maxim applies: "Ex dolo malo non oritur actio." Jones on Bailments (Ed. 1835) Appendix 15.

Batson v. Donovan, 4 Barn. & Alderson, 21, 6 E. C. L. 333, is a leading case on the subject. All of the judges wrote concurring opinions, except Best, J., who dissented. Bayley, J., said:

"The box delivered to the carrier contained bills, checks, and notes amounting to the value of £4,070. The defendants had given notice that they would not be answerable for parcels of value unless they were entered and paid for as such. The plaintiffs knew of this notice. The box was left with defendant with no other observation than this: 'It is the box from New Castle.' Nothing was said of what it contained, nor did any of defendants know it contained articles of value. The only mark on it was the name: 'William Batson, New Castle.' It was locked and corded—not sealed."

It was lost. He said that:

"The holding out as an ordinary risk what is really an extraordinary one is a legal fraud."

The reasons given by the judges for requiring notice, in such cases, to be given the bailee are: (1) That the compensation may be fixed according to the risk assumed; (2) that the bailee might be enabled to bestow a higher degree of care in caring for the property, or, as said in Bignold v. Waterhouse, 1 Maule & S., 261:

"The nature and value of the parcel should be communicated, *to enable him to adopt proper precautions for their safety.*"

The principle was applied in Orange County Bank v. Brown, 9 Wend. (N. Y.) 85, 24 Am. Dec. 129. A person taking passage in defendant's steamboat put in his trunk a large amount in bank bills to be delivered to the bank. Upon going on the boat he placed his trunk behind the door, with the remark to the captain that "it was a trunk of importance"—saying nothing of its containing money. He stepped out of the boat, and during his absence the trunk was stolen. The trial court rendered judgment of nonsuit. Nelson, J., says:

"This case is peculiar in many of its features, and must be determined by a recurrence to some of the general and fundamental principles which govern actions of this kind."

After discussing the liability of common carriers when notice of limited liability is given, he says:

"But in the absence of notice, if any means are used to conceal the value of the article, and thereby the owner avoids paying a reasonable compensation for the risk, this unfairness and its consequence to the defendants, upon principles of common justice, as well as those peculiar to this action, will exempt them from the responsibility."

He says that in such cases the carrier is liable only for gross negligence.

"Instead of committing the several packages of money to the captain, which of themselves generally indicate their value, and in this case would have done so, as the figures could be seen upon them, and thereby enable the captain to exact a reasonable compensation for the risk, *and apprise him of the necessity for greater care and caution,* in the safe conveyance of the money

which he would naturally bestow in proportion to the value, he put them in his trunk and committed it to the captain as his baggage, affording no other indication of the value of its contents than that it was 'a trunk of importance.' "

The judgment of nonsuit was affirmed.

In Magnin v. Dinsmore, 62 N. Y. 35, 20 Am. Rep. 442, the plaintiff delivered to the express company a sealed package containing watches, etc., of the value of $1,491.50, taking a receipt stating that, if the value of the property was not given, the holder would not demand, for its loss, more than $50. The jury found that the package was lost by the negligence of defendant, and that there was no false statement made as to the character of the property in the package or its value. Folger, J. said:

"A neglect to disclose the real value of a package and the nature of its contents, if therewith there is that in its form, dimensions, and other appearance designed, and even if not designed, if fitted, to throw the carrier off his guard, will be conduct amounting to the fraud. * * * The intention to impose upon the carrier is not material; it is enough if such is the practical effect of the conduct of the shipper. * * * An examination of the testimony for the facts of the case has brought me to the conclusion that there is no proof of fraudulent concealment of value by the plaintiffs, unless their silence be such concealment."

The learned justice reviewed the authorities, and wrote, for a unanimous court, a reversal of a judgment holding defendant liable. The ruling was reaffirmed upon a second appeal. Magnin v. Dinsmore, 70 N. Y. 410, 26 Am. Rep. 608. These decisions were not based upon the limitation in the receipt.

In Southern Express Co. v. Everett, 37 Ga. 688, wherein it appeared that a small paper box containing a diamond pin of the value of $500 was delivered to the carrier for shipment, unsealed, tied with a cotton string. No information was given the carrier of the contents of the box at the time of the delivery, and no questions were asked by the agent as to its contents. The charge for carriage was 25 cents. Warner, C. J., said:

"It is insisted that it was the duty of the agent * * * to have required the contents of the box to have been made known to him at the time of delivery, and that, inasmuch as he did not make the inquiry, the defendant is liable for the full value of its contents. * * * It is true the defendant, as a common carrier, may require the nature and value of the goods * * * to be made known; but if the conduct of the shipper was such, at the time of the delivery of the goods, as would be calculated to induce the defendant to believe that the goods delivered were of but little value, or such as would be calculated to conceal from him the true value thereof, and thereby throws him off his guard as to the necessity of making any inquiry as to the nature and value of the goods delivered, in order to deprive the carrier of his lawful freight, such conduct on the part of the shipper would be a legal fraud upon the carrier. The point is not whether the defendant might have inquired as to the nature and value of the goods; but the point in the case is whether the acts and conduct of the shipper in regard to this box and contents were not calculated and intended to conceal from the defendant the nature and value of the contents." 4 Kent, Com. 603. "If the shipper used any artifice whatever to conceal from the carrier the true value of the contents of a package delivered to it for transportation, the carrier is relieved from liability for ordinary negligence to a greater extent than the value indicated by the external appearance of the package. * * * There

is no justice in allowing the shipper to be paid a large value for an article which he has induced the carrier to take at a low rate of freight on the assertion and agreement that its value is less than claimed after its loss." Moore on Carriers, 355; Hutchinson on Carriers, 211, 212.

I am not inadvertent to the decisions of a number of courts which seem to repudiate the doctrines sustained by the authorities cited. They appear to be based upon the theory that public policy demands that persons who deal with common carriers are not bound by the terms of their contracts, and, notwithstanding terms entered into based upon valuable consideration, may sue for and recover amounts largely in excess of the asserted value of property shipped upon contractual representations, on the faith of which they deprive the shippers of a fair compensation for his services and increased hazard. Whether these decisions do not overlook a fundamental truth—that the highest and best public policy, that which ultimately and permanently makes for honesty and fair dealing, demands that men keep their covenants, although to their own hindrance—is not relevant to this discussion. The Supreme Court of the United States has uniformly so held. In Mo., Kans. & Tex. Ry. Co. v. Harriman, 227 U. S. 657, 671, 33 Sup. Ct. 397, 400 (57 L. Ed. ——), Mr. Justice Lurton, discussing the legal effect of obtaining a lower rate of freight by reason of an agreed valuation below the actual value of the property said:

"It is neither just nor equitable that he shall benefit by the lower rate, and then recover for a value which he said did not exist, in order to obtain that rate."

Certainly the reason and principle upon which these decisions are based apply with equal, if not greater, force to a case where the defendant is, at most, a mere bailee for carriage. The fact that the diamonds were in a registered package cannot affect the defendant's liability. It had no notice that the package was registered, and assumed no greater or higher degree of care for its safe carriage than if in the ordinary mail. The rules provided by the government for registration of mail matter cannot affect the contractual liabilities of the defendant. There is no suggestion that its agents or employés were given notice that the mail car, or the pouches, contain registered mail. The reason assigned by the judges for holding that the carrier is entitled to notice that packages delivered for carriage contain articles of great value, where there is nothing in the package to indicate the character or value of the contents, applies with special force to this case. The diamonds were not destroyed, nor was their quality or value affected, by the burning of the mail car. If the defendant had been notified that they were in the car, it could have provided an iron safe, as is done by express companies, for packages of money or jewels, which would have protected the sealed package containing the diamonds; or, if notice had been given that they contained diamonds, defendant could have guarded the ashes of the car until the diamonds could have been recovered and saved. The agents, clerks, and employés of the plaintiff, in whose actual possession and control the mail was placed, would, if informed of the presence of diamonds in the registered mail, have protected them from trespassers.

It has been held, and with much reason, that the infirmity in an action by the bailor for loss of goods, secretly or by concealment, inserted into a package, otherwise coming within the terms of the contract of carriage, goes to the "root of the matter," in that the bailee never undertook to carry such matter—that it does not come within the contract. This is illustrated in cases wherein money, jewelry, or other articles of unusual character and large value are placed in trunks and delivered to the carrier as baggage, which it is under obligation to carry as incident to the contract to carry the passenger. In Orange County Bank v. Brown, supra, Judge Nelson says:

"It may be difficult to define with technical precision what may be legitimately included in the term 'baggage,' as used in connection with traveling in public conveyances; but it may be safely asserted that money, except what may be carried for the expense of traveling, is not thus included, and especially a sum like the present, which was taken for the mere purpose of transportation. * * * The law is now very properly altered, as a reasonable amount of baggage, by custom or the courtesy of the carrier, is considered as included in the fare for the person; but courts ought not to permit this gratuity or custom to be abused, and under pretense of baggage to include articles not within the sense or meaning of the term, or within the object or intent of the indulgence of the carrier, and thereby defraud him of his just compensation, and *subject him to unknown and illimitable hazards.* If the amount of money in the trunk in this case is not fairly included under the term 'baggage,' * * * Then the conduct of the agent was a virtual concealment of that sum. His representation of his trunk and the contents as baggage was not a fair one, and was calculated to deceive the captain, and it would be a violation of first principles to permit the plaintiffs to recover."

So it is said:

"A mutual assent is always needful, whether evinced by words or acts; but no one can become responsible, even as a gratuitous bailee, when goods are surreptitiously put in his carriage or thrust upon his person without his knowledge or consent, though, if upon ascertainment of this fact he went on with the trust, this might bind him." Heatherington v. Richter, 31 W. Va. 860, 8 S. E. 610.

It would seem clear that, in an action by the owners of the diamonds, the defendant would have a perfect defense.

In view of the conceded fact that, in its essential features, this case is of first impression—that, notwithstanding the fact that during all of the years intervening since the establishment of our postal system, and the use of railway companies as one of the agencies used therein by the government, and the many instances in which the mail has been destroyed or lost by the negligence of their employés, no action has been brought by the government upon the theory that it was bailee for the owners—it is the duty of the courts to proceed with caution and examine with care the principle upon which a legal liability for the carriage through the mail of articles of the character and value involved in this action is founded. The ultimate decision of the question presented in this case must have a far-reaching effect upon the liability assumed both by the government and the agencies employed by it in performing this most important governmental function. The owners of the diamonds placed them in the mail in Paris, in violation of the law; they insured themselves against injury by reason of

their loss; the insurance company received, by way of premium, a consideration for the liability assumed; the owners, and the insurance company, for whose benefit this action is prosecuted, were the only persons who knew that the diamonds were in the sealed package. The agents and the employés of the Post Office Department, in Paris and in this country, were the only persons who had an opportunity to know, or the power to inquire, as to the contents of the sealed package; and yet it is sought to hold the defendant—the only agency in the entire transaction which did not, and could not by any possible means, know that in a mail pouch, placed in a car. under the exclusive control of the plaintiff's agents and officers, there was concealed, in a sealed package, diamonds of the value of thousands of dollars—responsible for their loss.

For the reasons stated by the court in Boston Ins. Co. v. Railroad, supra, it is very doubtful whether the diamonds were ever in the possession of the defendant, in any proper or legal sense—whether the relation of bailor and bailee was established, either between the government and the owner of the diamonds, or between the former and the defendant. In regard to the interesting question, discussed by counsel, that, the defendant being engaged in the discharge of a governmental function, liable only for corporate negligence, and not for the negligence of its servants and employés, the principle of respondeat superior does not apply, it has much authority for its support. The contention that, if the action was prosecuted by the owners of the diamonds, it could not be sustained, finds support in decided cases so far back as the time of Lord Raymond. Lane v. Cotton, 1 Ld. Raym. 646, reviewed and affirmed in Whitfield v. De Spencer, 2 Cow. 754. These cases are cited by the courts and standard authors with approval. In Bankers' Mutual C. Co. v. Minneapolis, St. P., etc., Ry. Co., 117 Fed. 434, 54 C. C. A. 608, 65 L. R. A. 397, it is said:

"It seems clear to us that defendant in error was a public agent of the United States in relation to carrying the mail, for the reason that the Constitution of the United States conferred upon it the power to establish post offices and railroads, and this power was granted by the people as one of the sovereign powers, to be exercised by the general government exclusively. By virtue of this grant of power, the United States has always, through its post office department, assumed the exclusive charge of the carriage and delivery of the mail for the benefit of all the people. In doing so, the United States is beyond question engaged in the discharge of a governmental function. All persons or corporations who are engaged in the carriage or delivery of the mail by the authority of the United States, conferred by contract or general laws, are but the instruments used by it to discharge this function. * * * A public officer or agent, provided he has exercised ordinary care to select competent subordinates, is not responsible for the misfeasances or positive wrongs, or for the nonfeasances, or negligences of omissions of duty, of the subagents or servants, or other persons properly employed by or under him in the discharge of his official duties"—citing numerous cases.

In that case, the mail sack containing the registered package in which the money, which was the subject-matter of the litigation, was inclosed was delivered by the route agent, in accordance with his duty and the regulations of the department, to the station agent of the de-

fendant, by whose negligence the money was taken from the sack and stolen. The station agent was not a sworn agent or employé. The court held that this fact was not controlling, and in the absence of any evidence of want of care on the part of defendant in the employment of the station agent it was not liable for his negligence. This decision has the additional weight of authority in the fact that a petition for a writ of certiorari was denied by the Supreme Court (187 U. S. 648, 23 Sup. Ct. 847, 47 L. Ed. 348), and a writ of error dismissed (192 U. S. 371, 24 Sup. Ct. 325, 48 L. Ed. 484). Unless the fact that here the action is brought by the government distinguishes the cases, the decision is well-nigh conclusive as authority for the position of defendant. The relation of the defendant to the government in respect to carrying the mail is treated by the Supreme Court as settled in Atchison, Topeka & Santa Fé R. R. v. U. S., supra. Counsel for plaintiff call attention to the fact that the collision resulting in the destruction of the mail car was not caused by any act of negligence on the part of any servant or employé of defendant while engaged in "carrying the mail"; that the engineer in charge of train No. 35, to which the mail car was attached, was not negligent; that the collision was the result of, and caused by, the negligence of the employés in charge of train No. 8. This is true. The cause of action, then, if any, was not the breach of the contract of carriage, upon which the complaint is based, but the wrongful obstruction of defendant's track, resulting in the destruction of the mail car. This was a tort, and not the breach of the contract.

In its third cause of action, plaintiff alleges the negligence of the employés of train No. 8 in obstructing the track and failing to put out proper signals, and that "defendant in plain violation of its duty to plaintiff carelessly and negligently issued to its conductor on its train No. 35, carrying said mail car on said date and time, running orders indicating a clear track at Kenly, a station south at Lucama, where it did know, or ought to have known, that its track at Lucama, on said date, and at the schedule time for its train No. 35 to pass Lucama, was or would be obstructed by freight cars of its train No. 8, etc.

There is no evidence in the record to sustain the allegation in respect to negligence in giving orders to train No. 35, or that any servant, agent, or employé of defendant, upon whom was imposed any duty in regard to giving orders to train No. 35, knew or could have known of the negligence of the servants and employés of train No. 8 at Lucama. If these employés had obeyed the rules of the defendant, it is manifest that there would have been no collision. It is not suggested that any other employés of defendant knew, or could have known, that they had not obeyed such rules.

In the eighth paragraph of the third alleged cause of action, plaintiff alleges that:

"Defendant owed to the plaintiff the duty, in addition to the duties hereinbefore set forth, of caring for, protecting, and guarding the débris of the said burned mail car. That, in violation of defendant's plain duty in this respect, the defendant, with full knowledge that the said mail car had contained mail matter consisting of indestructible valuable stones, nevertheless, regardless of its duty, utterly failed and neglected to guard, protect, preserve, and rescue from said fire, loss, and destruction, and from the depredation of de-

fendant's own agents and employés, and of all other persons, the débris of said railway post office car and the said valuable matter which it contained," etc.

Without pausing to discuss the allegation that defendant was under obligation to guard the ashes and débris of the burned mail car, it is sufficient to say that there is not a scintilla of evidence that either plaintiff's route agents, mail clerks, or any other of its employés, or of defendant's servants or agents, knew or had any intimation of the presence of "indestructible valuable stones" in such débris, unless the facts, testified to by the witnesses in regard to the manner in which the diamonds were found by several persons, fixed them with such notice. This was not seriously contended on the argument. It would be unreasonable to hold that defendant's employés should have anticipated that the registered package contained diamonds, when plaintiff's employés who handled the mail did not do so. To hold the defendant to an entirely different and immensely higher degree of care in protecting the débris of the car than plaintiff's own employés and servants exercised in respect to the same matter is not reasonable. I do not perceive how plaintiff can recover upon this allegation and proof.

In the view taken of the case, it becomes unnecessary to inquire whether the plaintiff is barred by the statute of limitations. The action is based upon a contract not under seal, and is barred after three years from its breach. Rev. N. C. 1905, § 395. Unless the defendant is deprived of this defense by reason of the rule that the government is not within the provisions of the statute of limitations, it is a complete bar to this action. The collision occurred April 18, 1904; the summons was issued September 9, 1907. In addition to the authorities cited relevant to this question upon another phase of the case, the Supreme Court has held that:

"When * * * the suit was brought for the benefit of private persons, and the government had no interest in the result, the United States are barred from bringing the suit, if the persons for whose benefit the suit is brought would be barred." Curtner v. U. S., 149 U. S. 662, 13 Sup. Ct. 985, 1041, 37 L. Ed. 890.

So, in United States v. Bell Telephone Co., 167 U. S. 224, 265, 17 Sup. Ct. 809, 820 (42 L. Ed. 144), the principle of liability to defenses, not otherwise available against the government, is applied when it "is seeking to discharge its obligations to the public. When it has brought the suit simply to help an individual, making itself, as it were, an instrument by which the right of that individual * * * can be established, then it becomes subject to the rules governing like suits between private litigants." That was an action to vacate a patent for fraud. The principle is too well settled to call for further citation of authority. It would seem to be applicable to the instant case. The equity of the rule is manifest here. Those in whose behalf the plaintiff is suing knew, certainly within a short time, that the diamonds had not reached their destination. They recovered their value from the insurance company nearly four years before this action is brought for their benefit.

I am therefore of the opinion that, taking the view most favorable to those for whom the plaintiff sues, and therefore for the plaintiff,

the defendant is not liable for the value of the diamonds. I am further of the opinion that the fine imposed by the Postmaster General operated as an accord and satisfaction of all claims accruing to plaintiff by reason of the destruction of the mail car. U. S. v. Oliver (C. C.) 36 Fed. 758. Postal Regulations, § 1335, provides that fines will be imposed under the authority vested in the Postmaster General by section 3962 for each of the following delinquencies:

"Suffering the mail, or any part of it, to become wet, lost, injured, or destroyed, or conveying or keeping it in a place or manner that exposes it to depredation, loss, or injury."

The act complained of, and for which the fine of $500 was imposed, is clearly within this enumeration of causes, etc.

Upon a careful consideration of the entire record, including the verdict of the jury, I am of the opinion that the plaintiff is not entitled to recover upon either of the causes of action. A judgment may be drawn that defendant go without day. The defendant will not recover costs against the government. Pine River L. & T. Co. v. U. S., 186 U. S. 279, 22 Sup. Ct. 920, 46 L. Ed. 1164.