## CLOQUET CO-OPERATIVE SOCIETY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 39021, 40942.    Promulgated December 17, 1930.

*George B. Leonard, Esq., H. Edelman, Esq.,* and *Louis B. Mont-fort, Esq.,* for the petitioner.
*John D. Kiley, Esq.,* for the respondent.

### MEMORANDUM.

TRUSSELL: The appeal, Docket No. 39021, is from the respondent's determination of a deficiency in the amount of $625.85 in petitioner's income taxes for the years 1924 and 1925, the said deficiency resulting from the respondent's (1) disallowance as an interest deduction in each year, the 6 per cent paid on petitioner's outstanding capital stock, and (2) his disallowance of a deduction in 1924 and 1925 for taxes for those. years, the said taxes having been ascertained as to amount and accrued on petitioner's books for each year although not actually paid until 1925 and 1926, respectively.

The appeal, Docket No. 40942, is from the respondent's determination of a deficiency in the amount of $436.25 in petitioner's income tax for the year 1926, the said deficiency resulting from the respondent's disallowance of the 6 per cent paid on petitioner's outstanding capital stock as an interest deduction. The two proceedings have been consolidated for hearing and decision.

The Cloquet Co-operative Society has been in existence for some 20 years. It was incorporated or reincorporated at or about July 1, 1921, for a period of 30 years under the cooperative law of the State of Minnesota, chapter 382, Laws of 1919, as amended by chapter 23 of the Sessions Laws of 1921. In 1924 petitioner's articles of incorporation were amended under chapter 326, Sessions Laws of 1923 of the said State. The petitioner's authorized capital stock is $200,000, divided into 20,000 shares of the par value of $10 each, and it is authorized to carry on and engage in a wide variety of business enterprises such as buying and selling merchandise, livestock, farm produce and machinery, real estate and lumber, and

operating garages, warehouses, cold storages, and also acting as agent or broker for the sale of property for a commission.

During 1924 the petitioner owned and operated two stores within the city limits of Cloquet, which had a population of about 6,000. Subsequent to that year a third store was established about five miles from the city. All three stores engaged in the business of retailing farm produce, feeds, farm machinery and implements, merchandise, groceries, and other necessities for both the city and farm population in and around Cloquet. In 1924 the petitioner had between five and six hundred members, that is, persons who held certificates for shares of petitioner's capital stock, and such members were required by the by-laws to deal at the petitioner's stores.

Since 1924 petitioner's membership has been increasing at a rate of about one hundred per year. The petitioner also dealt with nonmembers numbering about 10 per cent of its membership.

At the close of each of the years in controversy, the petitioner, pursuant to its by-laws, computed the amount designated as interest at 6 per cent on the par value of all fully paid shares of stock outstanding from 1 to 12 full months during the year. The amounts so computed were $1,808.77 for 1924; $2,307.90 for 1925; and $2,884.15 for 1926, which were charged off as an expense under the title of "Interest on Share Capital" and credited to the membership account in each of the said years respectively. The amounts so computed for 1924 and 1925 were accrued on petitioner's books at the close of those years, but were not paid until January, 1925 and 1926, respectively. The amount so computed for 1926 was paid in December of that year.

The petitioner's by-laws in effect during the years in controversy provide in part:

### Article I.

#### Object and Purpose of the Society.

Sec. 1. The purpose of this co-operative society shall be to supply its members with provisions and fuel, clothing and other necessities as economically and advantageously as possible through co-operation and with the aid of joint funds, to purchase, distribute and produce in common. The co-operative society is not a competitive business which endeavors to accumulate money by selling commodities for profit, but its object is to aid in bringing about a complete change in the present system of production and distribution, and in developing a new and just system serving the interests of the community. Members should understand the organization and the purpose of the co-operative society with this point in mind.

### Article III.

#### Membership.

Sec. 1. Any person residing in the locality may become a member of the society, provided he is approved by the Board of Directors, purchases at least

one share of stock, and pledges himself to comply with the rules of the society and the decisions of its meetings.

\*　　　\*　　　·\*　　　\*　　　\*　　　\*　　　\*

## ARTICLE IV.

### Board of Directors.

Sec. 1. The management of this society shall be vested in a Board of Directors of eleven persons who shall be elected for one year periods by secret ballot at the annual meeting of the members. \* \* \*

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

### Duties of the Directors.

Sec. 6. The duties of the Board of Directors shall be:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

f) To announce and distribute the dividends in the manner provided by these By-Laws.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

## ARTICLE VI. ·

### Capital Stock and Stock Certificates.

Sec. 1. This society has been incorporated under the co-operative laws of the State of Minnesota with a capital stock of $200,000.00, divided into 20,000 shares of the par value of $10.00 each.

Sec. 2. Stock certificates or shares of stock shall not be issued to any one before they have paid to the treasurer of the society, in cash or in produce and in accordance with the instructions of the Board of Directors, the full par value of at least one share of stock. All stock certificates issued shall bear in plain writing the name of the person to whom they are issued, the number of shares they represent, the number of the certificate, and shall be certified by the president and secretary and shall have the seal of the society affixed thereto.

Sec. 3. Shares of stock shall not be transferred from one person to another without the approval of the Board of Directors. When some one desires to sell his share of stock, he shall first offer it to the Board of Directors, which may redeem it to the society if it deems it advisable. When a transfer is made, the owner of the stock certificate, or his authorized representative, shall present the stock certificate (shares of stock) to be transferred, to the secretary of the society, or some other duly authorized person, who shall make the transfer on the books of the society to the new owner.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

## ARTICLE VIII.

### Division of the Surplus.

Sec. 1. The net profits of the society, after all business expenses have been deducted and all depreciations provided for, shall be called the " net surplus " and it shall be divided annually by the Board of Directors, unless otherwise decided by the annual meeting, in the following manner:

a) Of the annual net profit of the society at least 10 per cent (10%) shall be transferred to surplus fund until such surplus shall amount to fifty per cent

(50%) of the paid-up capital of the society. The surplus may be used in the business of society as an additional capital. (Note.—At the annual meeting, or at special meeting called for the purpose, the members may increase the surplus until it shall amount to same as the paid-up capital stock of the society).

b) There shall be paid annually not more than six per cent (6%) interest on the fully paid shares owned by each member of the society.

c) Five per cent (5%) of the net surplus shall be transferred annually into the educational fund, for the propagation of the principles of co-operation, and the use of this fund shall be determined more definitely by the annual meeting:

d) The remainder of the net surplus shall be divided among the purchasers, members and nonmembers, in shares of stock in the association on the basis of their purchases.

Petitioner's amended articles of incorporation and the above quoted by-laws are in pursuance of chapter 326, Sessions Laws of 1923 of Minnesota, which provides in part, relative to the annual interest on stock of co-operative corporations:

Section 7. * * *

From the gross income of each fiscal year there shall be deducted an amount sufficient to pay interest for such year on the paid-up capital of the association at such rate as may be determined by the board of directors or as may be fixed in the by-laws of the association and which shall not exceed 8 per cent annually on the amount of the par value of such stocks; * * *

\* \* \* \* \* \* \*

Interest shall be paid on the paid-up capital only when the net income of the association for the previous fiscal year is sufficient and such interest shall not be cumulative. If the board of directors of any co-operative association organized under this act shall authorize the payment of interest on the paid-up capital stock in excess of 8 per cent per annum or shall cause the income of such association to be apportioned or distributed in any other or different manner than herein provided, such act shall be cause for cancellation of the charter of such association, and the attorney general may, in the name of the state, commence and prosecute appropriate proceedings for the cancellation of such charter.

In its returns for the years 1924, 1925, and 1926 the petitioner took deductions for the amounts paid or accrued in those years as "interest on Share Capital," which amounts petitioner claimed then, as it claims now, represented interest on money loaned to the corporation. The respondent disallowed the said deductions on the ground that the amounts so paid or accrued in those years constituted dividends on the petitioner's capital stock and not deductible interest on loans.

With respect to petitioner's claim that the so-called interest paid to its members at the rate of 6 per cent upon the shares of stock held by them, the Board has heretofore in *Sacred Heart Cooperative Mercantile Co.*, 2 B. T. A. 24; *Farmers' Cooperative Milk Co.*, 9 B. T. A. 696; *Riverdale Cooperative Creamery Association*, 18 B. T. A. 1159, and in other cases had before it, this same question and it has been universally held that where, as in this case, a so-called interest is

payable only from the profits of the business and is not and can not be a charge against the general assets, such payments must be treated as dividends and not as deductions from gross income.

Pursuant to the General Statutes of the State of Minnesota all taxes are levied within each taxable year, ch. 11, sec. 2055, and a lien for such taxes attaches on May 1 of the year in which the levy is made, which lien is not removed until the taxes are paid, ch. 11, secs. 2191 and 2199–2201. Also see *State* v. *Northwestern Telephone Exchange Co.*, 80 Minn. 17; 82 N. W. 1090; *National Bond & Security Co.* v. *Hopkins*, 96 Minn. 119; 104 N. W. 678; *Thompson* v. *United States*, 8 Fed. (2d) 175. In each of the taxable years 1924 and 1925 the lists showing the amount of taxes due were completed prior to the close of said year, and the petitioner, as had been its custom for many years, requested the county auditor or treasurer for a statement as to the amount of its taxes. Upon receipt by petitioner, prior to the close of each of said years, of a formal list or statement as to the exact amount of taxes for which it was liable, the petitioner accrued such taxes upon its books as an expense, although such taxes were not due until the first Monday in January of the ensuing year. The petitioner has kept its books and made its returns on the accrual basis, and in its income-tax returns for the years in controversy petitioner deducted, as taxes accrued, $1,620.93 for 1924, $1,445.77 for 1925, and $1,279.12 for 1926.

No issue has been raised relative to the deduction for taxes for the year 1926, but as to 1924 and 1925 the respondent disallowed the deduction claimed by petitioner for taxes accrued on its books in those years, on the ground that such taxes did not become due and payable until the respective ensuing years and, further, that such taxes are not deductible until the liability therefor becomes fixed.

We are of the opinion that all of the events had occurred which fixed the amount of the Minnesota taxes and determined the liability of the petitioner to pay them, and that such taxes had accrued prior to the close of each of the years 1924 and 1925. This petitioner regularly kept its books upon the accrual method of accounting and it properly accrued on its books its 1924 and 1925 taxes in those years, respectively, and it properly deducted them in computing its net income for those years, although the taxes were paid in each ensuing year. Cf. *Ira L. Henry Co.*, 9 B. T. A. 540; *Crown Willamette Paper Co.*, 14 B. T. A. 133.

*Judgment will be entered pursuant to Rule 50.*