PERRINE & BUCKELEW, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 64065. Promulgated February 28, 1935.

H. R. Elder, Esq., and Oscar Ferger, C. P. A., for the petitioner.
G. R. Sherriff, Esq., and H. B. Linton, Esq., for the respondent.

OPINION.

BLACK: Did the respondent err in disallowing as a deduction from gross income the item of $9,967.10?

Petitioner in its brief argues "That the so-called special common stock—Series A Certificates were not Certificates of stock in fact but were in effect certificates of a restricted indebtedness" and further contends "That the payments in controversy made to the holders of the Series A Certificates were not dividends but a consideration for forbearing to enforce a legal right." Respondent contends that these contested payments were dividends paid to the holders of the corporation's special class A common stock.

Our problem is to determine whether the payments were dividends as defined in section 115 (a) of the Revenue Act of 1928, or deductions from gross income under either paragraph (a) or (b) of section 23 of the same act. These statutory provisions are set forth in the margin.[1] Whether these payments are dividends or deduc-

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATION.

(a) *Definition of dividend.*—The term "dividend" when used in this title (except in section 203 (a)(4) and section 208 (c)(1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) *Expenses.*—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *

(b) *Interests.*—All interest paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations or securities (other than obligations of the United States issued after September 24, 1917, and originally subscribed by the taxpayer) the interest upon which is wholly exempt from taxation under this title.

tions as either expenses or interest depends upon whether the Perrines received such payments in the capacity of shareholders or as creditors of the corporation.

The question whether certain payments made by other corporations were dividends or deductions from gross income within sections 115 and 23, respectively, of the Revenue Act of 1928, and similar provisions of other revenue acts, has often been the subject of controversy before the Board and the courts. We do not deem it necessary to discuss the numerous decisions dealing with the subject. Suffice it to say that in each of the cases to which we have been cited, the decision turned on the peculiar facts and the construction given to the particular document or documents there in question. We approach the problem here presented in the same way.

It is perfectly clear that prior to the reorganization of petitioner's financial structure on December 30, 1924, the Perrine brothers were stockholders and not creditors of the petitioner. Except for the qualifying shares held by Malan and Wyckoff, Joseph and Samuel Perrine were the sole stockholders, owning six sevenths and one seventh of the stock, respectively.

Upon the issue of the new shares referred to in our findings of fact, did the Perrines become creditors of the petitioner by reason of the receipt by them of the series A special common stock certificates? We think not. In his opening statement, counsel for petitioner said: " It is admitted by the petitioner it called the certificates stock certificates, and treated them as such on its books." Of course, it is well settled that the name given to an instrument is not conclusive evidence of its character. *Leasehold Realty Co.*, 3 B. T. A. 1129; *H. R. DeMilt Co.*, 7 B. T. A. 7. But it is equally well settled that the terms used and the treatment accorded to the instrument by its creator can not be lightly set aside. *Kentucky River Coal Corporation*, 3 B. T. A. 644; *Bolinger-Franklin Lumber Co.*, 7 B. T. A. 402; *Angelus Building & Investment Co.*, 20 B. T. A. 667; affd., 57 Fed. (2d) 133; certiorari denied, 286 U. S. 562.

In *Cary* v. *Savings Union*, 22 Wall. 38, the question was whether certain payments by a bank to certain of its depositors were dividends or interest. The question arose under an act of Congress passed in 1864 (13 Stat. L. 283), as amended in 1866 (14 Stat. L. 138), which provided that there should be levied and collected a tax of 5 percent on all dividends, with a proviso " That the annual or semiannual *interest* allowed or paid to the depositors in savings banks or savings institutions shall not be considered *as dividends*." The entire opinion of Mr. Chief Justice Waite, holding the payments to be dividends, is as follows:

A distinction is expressly recognized in the act of Congress between interest and dividends, and the Circuit Court decided that the payments to the de-

positors were for dividends. The question is whether this decision was correct.

We think it was. The depositors contracted not for a rate of interest to be paid upon their deposits; but for a share of the profits of the business in which their money was, by agreement, to be employed. It is true that the profits of the company were principally to be derived from interest upon loans made, but they were none the less on that account profits. The interest received for the loan of each deposit was not kept by itself, and paid to. the depositors after deducting a charge to cover expenses, but all was placed in a common fund, and when the net result of the business was ascertained, that was divided among the several contributors according to the value of their contributions. Such a division clearly produces a dividend according to the common understanding of that term. The parties themselves so understood it, for they gave it that name in the contracts, executed when the depositors made their deposits. They stipulated for the payment of dividends and not interest.

It is true that the holders of the series A certificates alone were to share in the profits of certain segregated assets belonging to the corporation, and, in case of liquidation, in the proceeds from the sale of the assets themselves. But we fail to see wherein this fact would make the holders thereof creditors of the corporation. The payments were not to be made until declared by petitioner's board of directors, and were to be paid out of " proceeds and profits received by said company by interest or otherwise from all bonds and mortgages, notes and accounts set aside and segregated ", etc. Petitioner's segregated assets were subject to the claims of its general creditors as much as were its remaining assets. These assets were kept in the business at the risk of the business. Each certificate of class A common stock specifically provided that it was a part of the issue of petitioner's capital stock " amounting in all to Seven Hundred Thousand Dollars ($700,000.00), par value, authorized by the Certificate of Incorporation of the company, as amended, dated December 30, 1924, and filed in the office of the Secretary of State of the State of New Jersey." We are, therefore, of the opinion and so hold that such series A certificates were certificates of petitioner's authorized capital stock and not, as petitioner contends, certificates of a restricted indebtedness.

We now turn to the document executed on December 31, 1928, shown in our findings of fact. Was it in effect a declaration by petitioner of a dividend in kind to the extent of $162,687.08? We think not. There was no resolution by petitioner's board of directors to that effect. But what is more important perhaps, is the fact that no assignment of the assets mentioned in that document has ever been made. Petitioner continued to use the assets therein mentioned in its business. It did not recognize this amount of $162,687.08 as a liability on its books of account. With reference to the failure of the corporation to actually assign these assets of an agreed value of $162,687.08 to its stockholders, the Perrines, at

the time the agreement was entered into, petitioner's witness, Jacob Wyckoff, testified as follows:

Q. Was there any conversation at that time as to when the actual assignment of these assets was to be made or any conversation in regard to the actual assignment?

A. Yes.

Q. What?

A. They were supposed to be assigned at that time.

Q. Well, why weren't they?

A. Well, they weren't assigned because we didn't want to take them out of our place.

Q. Well, what happened. You didn't want to take them out of your statement?

A. Then Mr. Perrine says—" If you don't do this, I should be compensated for it," so we agreed to pay him the equivalent of 6 per cent on the $162,000 until such time as the actual assignment was made.

Joseph M. Perrine testified to substantially the same effect. It seems to us that this oral agreement supplementing the written document of December 31, 1928, fell short of making the Perrines creditors of the corporation to the extent of $162,687.08.

It is well settled that the declaration of a dividend creates the relationship of debtor and creditor (*United States* v. *Guinzburg*, 278 Fed. 363), and where cash dividends declared are retained by agreement with the stockholders deferring payment until there is sufficient working capital in the treasury of the corporation, the relationship is one of debtor and creditor and interest paid to the stockholders is deductible as interest (*Southport Mill, Ltd.* v. *Commissioner*, 26 Fed. (2d) 17). But, as has already been pointed out, we have in the instant case no declaration of a dividend in kind amounting to the sum of $162,687.08, and no satisfactory evidence to show that the corporation became a debtor to its stockholders, the Perrines, for that amount. It seems to us that, giving full effect to the written agreement of December 31, 1928, and the oral testimony supplementary thereto, it simply shows that the Perrines agreed to remain series A common stockholders awhile longer, until such time as it would be convenient and expedient for the corporation to transfer to them the $162,687.08 in property in liquidation of their class A common stock, and in the meanwhile they should be paid dividends of 6 percent on $162,687.08. No showing is made that the $9,967.10 in issue in this proceeding was not paid out of earned profits of the corporation, and considering all the evidence we see no justification for treating the amount as anything other than a dividend. Nor can we treat the amount as a business expense incurred as petitioner contends, "as reasonable consideration for said stockholders' forbearing to compel the taxpayer to redeem their stock in accordance with the resolution of the directors and the

provisions of the certificate of incorporation." Dividends, such as we hold the $9,967.10 here in question to be, are not deductible as business expenses.

At the most, the agreement of December 31, 1928, and the oral agreement supplementary thereto, gave the stockholders, the Perrines, the right to demand that the corporation redeem their class A common stock by transferring to them the $162,687.08 property. This was apparently at the election of the Perrines. However, it has been held that a provision that stock is redeemable at the election of the stockholders upon notice does not create a debt. *Finance & Investment Corporation* v. *Burnet*, 57 Fed. (2d) 444.

Neither a provision for optional redemption within a period of years nor a subsequent contract will take a payment out of the class of dividends and cause it to be deductible. *Elko Lamoille Power Co.* v. *Commissioner*, 50 Fed. (2d) 595; *Angelus Building & Investment Co.* v. *Commissioner*, 57 Fed. (2d) 133.

The payments in issue here were not business expenses, and petitioner's contention in that respect is denied. For reasons already stated, we sustain the Commissioner.

Reviewed by the Board.

*Decision will be entered for the respondent.*

LEECH and TURNER dissent.

———

VAN FOSSAN, dissenting: I am unable to concur in the conclusion of the majority. The question in the case is whether or not certain payments were deductible business expenses of the petitioner. I believe the case turns on the agreement of December 31, 1928, and the subsequent transactions. By this agreement, after reciting that the amounts were due, the petitioner agreed to assign listed assets aggregating the amount of the claim. For corporate credit reasons, the assignment was not made, but the petitioner thereupon collaterally agreed to pay 6 percent on the sum due until such assignment should be made. The payments of 6 percent so made during 1929 give rise to the present controversy. The petitioner deducted them as interest paid. The respondent held them to be dividends.

By the agreement of December 31, 1928, the amount owed by the corporation to the Perrines was fixed and it was agreed assets should be assigned in payment. There would seem to be little doubt that the Perrines could have compelled specific performance of this agreement. The subsequent or collateral agreement to pay 6 percent on the principal amount so long as the petitioner withheld the assets and failed to make the agreed assignment was a new obligation. By

it the petitioner agreed to pay for the privilege of retaining the assets. Whether this new relationship was a loan of the $162,687.08 or a loan of the assets, it is not necessary to decide, but it seems clear to me the payment of the 6 percent for the use thereof was a proper business expense. The agreement to pay was absolute and was not related to the earnings on the assets or stock. It is only by an artificial and strained construction that it could be so related to the series A stock as to hold it to be dividends.

SMITH agrees with this dissent.