PALMER, STACY-MERRILL, INC., A DELAWARE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 87997. Promulgated March 25, 1938.

*Tom S. Patterson, Esq.*, for the petitioner.
*B. M. Coon, Esq.*, for the respondent.

532

**OPINION.**

ARUNDELL: Section 23 (b), *supra*, which petitioner pleads, provides that in computing net income for income tax purposes there

shall be allowed deductions from gross income of all interest paid or accrued within the taxable year on indebtedness. The petitioner contends that the circumstances under which it issued its preferred stock, together with the commitments it undertook at the time, created debts which it was bound to pay through redemption in cash, and not mere investments in its capital. In this view it argues that the dividends paid on the preferred stock amounted to interest on debts. The respondent contends for a strict construction of the preferred stock certificates, as held in *Elko Lamoille Power Co.* v. *Commissioner*, 50 Fed. (2d) 595 (affirming 21 B. T. A. 291); *Angelus Building & Investment Co.* v. *Commissioner*, 57 Fed. (2d) 130 (affirming 20 B. T. A. 667); *Finance & Investment Corporation* v. *Burnet*, 57 Fed. (2d) 444 (affirming 19 B. T. A. 643); and *Greensboro News Co.*, 31 B. T. A. 812.

If the disbursements here involved were made solely on petitioner's obligations under its preferred stock certificates, then the respondent's contention would prevail, since the issuance of preferred stock certificates, without more, can not create debts against a corporation even though a time fixed for their retirement is agreed upon. Fletcher, Cyclopedia Corporations, permanent ed., vol. 11, sec. 5294. *Booth* v. *Union Fibre Co.*, 137 Minn. 7; 162 N. W. 677. On the other hand, corporation stock certificates are no exception to the general rule of construction for written instruments, which places intent of the parties above mere form. *Burt* v. *Rattle*, 31 Ohio St. 116; *Heller* v. *National Marine Bank*, 89 Md. 602; 43 Atl. 800; *Savannah R. E. L. & B. Co.* v. *Silverberg*, 108 Ga. 281; 33 S. E. 908; *Ellsworth* v. *Lyons*, 181 Fed. 55. In the case at bar the holders of the stock certificates were not investors in any sense of that word. They were sellers who accepted the stock at the time of the transfer of their properties only on condition that the stock would be redeemed in cash and the dividends paid on dates certain, without regard to petitioner's earnings. In other words, the sale consideration included not alone the stock issued to the sellers, but in addition the purchaser's agreement to redeem all of the stock for cash at fixed times. Obviously, cash payments at times certain formed the essence of the sales agreements, and created indebtedness which could be discharged only by cash payments. This interpretation of the transactions finds undisputed support in the testimony of the Fruit Co.'s president, who negotiated them. He stated that the intention was to make possible ultimate cash payments to the sellers, not available when the sales took place but without which they would not sell, and, further, that the sellers rejected the proposal to accept payment in corporation stock, either common or preferred, as investments, insisting that they desired no interest in the buying corporation. This testimony was not disputed.

In all cases cited by the respondent the facts are clearly distinguishable from these at bar, and in none of them were there contracts which created debts independent of the stocks involved. However, in *Jones Syndicate* v. *Commissioner*, 23 Fed. (2d) 833, such an agreement was present, and the court there sustained the loan theory. *Elko Lamoille Power Co.* v. *Commissioner, supra,* cited by the respondent, by implication at least, approved the loan theory announced in the *Jones Syndicate* case by distinguishing its facts in language which we quote from the opinion, as follows:

* * * There were other stipulations not here applicable. The preferred stock was a direct obligation with a definite date for payment. In the instant case the preferred stock could, *at the option of the corporation,* be redeemed within three years at 110. In the *Jones Syndicate* there was an express provision to pay at five years. It was in effect a bond payable in five years.

The petitioner has cited numerous authorities to support its version of the transactions, but in view of the conclusions we have reached it is unnecessary to review them in detail here. The Fruit Co. purchased assets which the petitioner took over, issuing to the seller its preferred stock, agreeing in the same transaction to redeem all of the stock in determined installments on dates certain over a period of 20 years, and to pay dividends on the stock at the rate of 6 percent, payable quarterly. This created an indebtedness which could only be discharged by payment in money. The stock was accepted by the sellers not as an investment, but as security for the consideration which was to be liquidated in 20 installments, the sellers in the meantime to receive 6 percent on the deferred installments. The record convinces us that the petitioner's outstanding issue of preferred stock should be regarded as debts, and not an investment in its capital stock; also that the dividends provided for in the stock certificates were intended to represent compensation for deferred payments on the indebtedness thus created. *Proctor Shop, Inc.*, 30 B. T. A. 721; affd., 82 Fed. (2d) 792. In these circumstances the disputed disbursements amounted to interest on indebtedness, and we so hold. There being no deficiency in tax, there is no basis for assertion of the ad valorem negligence penalty.

*Decision will be entered for the petitioner.*