*Decision will be entered under Rule 50.*

BAKERS' MUTUAL COOPERATIVE ASSOCIATION OF NEWARK, NEW JERSEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 87871, 88985.   Promulgated October 11, 1939.

*Charles Handler, Esq.*, for the petitioner.
*C. C. Holmes, Esq.*, for the respondent.

OPINION.

Mellott: Petitioner claims the respondent erred in determining that the amounts paid to the certificate holders constituted dividends rather than interest. It contends that the amounts paid in by the members were "in every sense direct loans to the group by the individuals with a maturity date capable of becoming definite by the parties." It argues that all of the characteristics of an evidence of indebtedness, which it lists as a definite obligor, definite obligee, definite ascertainable obligation and time of maturity, were present; that the certificates were evidence of the loans and can not be construed to be certificates of stock; that they did not entitle the holders either to vote or to share in the profits; that the income and excess profits returns erroneously listed the amount represented by the certificates as capital; and that, as a matter of fact, no shares of capital stock were ever issued, subscribed for, or purchased.

The following statutes and regulations are particularly applicable to the year 1933:

*Revenue Act of 1932.—*

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(b) INTEREST.—All interest paid or accrued within the taxable year on indebtedness, except (1) on indebtedness incurred or continued to purchase or carry obligations or securities (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from the taxes imposed by this title, or (2) on indebtedness incurred or continued in connection with the purchasing or carrying of an annuity.

SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) DEFINITION OF DIVIDEND.—The term "dividend" when used in this title (except in section 203 (a) (4) and section 208 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

*Regulations 77.—*

ART. 141. *Interest.*—Interest paid or accrued within the year on indebtedness may be deducted from gross income, except that interest on indebtedness incurred or continued (1) in connection with the purchasing or carrying of an annuity, or (2) to purchase or carry securities, such as municipal bonds, first Liberty loan 3½ per cent bonds, or (in the case of a taxpayer not an original subscriber) obligations of the United States issued after September 24, 1917, the interest upon which is wholly exempt from tax, is not deductible. \* \* \*

ART. 621. *Dividends.*—The term "dividends" for the purpose of Title I (except when used in sections 203 (a) (4) and 208 (c) (1) comprises any distribution in the ordinary course of business, even though extraordinary in amount, made by a domestic or foreign corporation to its shareholders out of its earnings or profits accumulated since February 28, 1913. \* \* \*

No substantial change was made by the Revenue Act of 1934 or the regulations issued under it.

Neither party contends that petitioner, even though it apparently had not complied with the necessary formalities to make a *de jure* corporation, should not have filed a corporation income tax return. (Sec. 1111 (a) (2), Revenue Act of 1932; sec. 801 (a) (2), Revenue Act of 1934); *Morrissey* v. *Commissioner*, 296 U. S. 344. Nor does petitioner contend that it was exempt from tax under section 103 of the Revenue Act of 1932. The sole question is whether the amounts paid were interest or dividends.

Petitioner cites *Northern Fire Apparatus Co.*, 11 B. T. A. 355; *Proctor Shop, Inc.*, 30 B. T. A. 721; affd., 82 Fed. (2d) 792; *Richmond, Fredericksburg & Potomac Railroad Co.*, 33 B. T. A. 895; affd., 90 Fed. (2d) 971; and *Palmer, Stacy-Merrill, Inc.*, 37 B. T. A. 530. These cases—and others which might be cited—apply the principle that, where a creditor or a seller of property has accepted "guaranteed stock", i. e., stock carrying with it an agreement that so-called dividends will be paid whether earned or not, or preferred stock which is to be redeemed in cash and upon which dividends are to be paid on dates certain without regard to earnings, it remains a creditor of the corporation or debtor, and such debtor is entitled to deduct the amounts paid as "interest", even though designated dividends. This is on the theory that the payments are, in reality, interest, the income tax law being concerned with actualities rather than with book entries or designations by the parties.

Many cases have come before the courts or this Board in which the question has been substantially the same as that now presented. Each has turned upon "the peculiar facts and the construction given to the particular document" (*Perrine & Buckelew, Inc.*, 32 B. T. A. 168, 173) and none has undertaken to lay down a general rule of universal application. While the terms used by the parties and the treatment accorded to the instrument by its creator will not lightly be set aside or ignored, *Angelus Building & Investment Co.*, 20 B. T. A. 667; affd., 57 Fed. (2d) 130; certiorari denied, 286 U. S. 562, the name given to the transaction, or to the document under which the payment in question is made, is not conclusive.

In *Perrine & Buckelew, Inc.*, supra, the entire opinion of Mr. Chief Justice Waite, in *Cary* v. *Savings Union*, 22 Wall. 38, holding that payments by a bank to certain of its depositors were dividends, was quoted. It is as follows:

A distinction is expressly recognized in the act of Congress between interest and dividends, and the Circuit Court decided that the payments to the depositors were for dividends. The question is whether this decision was correct.

We think it was. The depositors contracted not for a rate of interest to be paid upon their deposits, but for a share of the profits of the business in which their money was, by agreement, to be employed. It is true that the profits

of the company were principally to be derived from interest upon loans made, but they were none the less on that account profits. The interest received for the loan of each deposit was not kept by itself, and paid to the depositors after deducting a charge to cover expenses, but all was placed in a common fund, and when the net result of the business was ascertained, that was divided among the several contributors according to the value of their contributions. Such a division clearly produces a dividend according to the common understanding of that term. The parties themselves so understood it, for they gave it that name in the contracts, executed when the depositors made their deposits. They stipulated for the payment of dividends and not interest.

It has frequently been pointed out that a creditor is one who has loaned money or its equivalent to his debtor, the contract giving the creditor not only the unconditional right to demand payment of the principal sum at a definite maturity date, but usually, also, the right to demand, and receive, compensation for its use or retention, i. e., interest. A stockholder, on the other hand, is one who risks his money in an enterprise, participates in its profits and management, shares its losses, and is entitled to receive an aliquot portion of its assets in the event of liquidation. *Northern Fire Apparatus Co., supra; Elko Lamoille Power Co.*, 21 B. T. A. 291; affd., 50 Fed. (2d) 595. Petitioner contends that the relationship between it and its certificate holders was that of debtor and creditor; but we hold otherwise.

The evidence shows, as we have set out in our findings, that the association in the beginning of its operations paid nothing on the certificates of deposit, as there were no earnings. When it began to operate at a profit, payments equivalent to 6 percent of the face amounts of the certificates were made, but only when authorized by the board of directors. The certificate holders were not entitled to demand a fixed rate of return upon the amounts which they had paid in. The amount to be paid to them was dependent upon whether the association had any earnings: *Finance & Investment Corporation*, 19 B. T. A. 643; affd., 57 Fed. (2d) 444; *Greensboro News Co.*, 31 B. T. A. 812; *Cloquet Co-operative Society*, 21 B. T. A. 744, and, even then, their right to receive any sum was dependent upon the action of the board of directors. Cf. *Badger Lumber & Coal Co.*, 23 B. T. A. 362.

The fact that the association kept separate books of account in which the amounts paid on the certificates were referred to as "interest" is immaterial. The terminology used by the association in its records is not determinative of the legal character of the payments. *Angelus Building & Investment Co., supra.* Whatever significance may be attached to such entries is materially weakened by the designation in the constitution of the same payments as "dividends" and "discount." They are nowhere referred to in the constitution as "interest."

Regardless of the terminology used, the question is: "Were the payments 'distributions * * * to its shareholders * * * out of its earnings or profits' or 'interest paid or accrued * * * on indebtedness'?" We have held they were the former. Several bits of evidence and circumstances clearly so indicate. It will be noted that the certificate holder was "to share in the profits as declared in said by-laws." This provision of the certificates was always com‚ plied with; and, if there were no profits the association was not obligated to make, and actually did not make, any payments for the use of the money. Clearly there was no contract under which "compensation was to be paid by the borrower of money to the lender for its use." 33 Corpus Juris 178; *Joseph W. Bettendorf*, 3 B. T. A. 378; *Anderson & Co.*, 6 B. T. A. 713. "The usual import of the term [interest]", says the Supreme Court in *Old Colony Railroad Co.* v. *Commissioner*, 284 U. S. 552, 560, "is the amount which one has contracted to pay for the use of borrowed money."

Petitioner attempts to support its contention that the payments were interest by evidence showing that from time to time payments were made to withdrawing members in amounts aggregating the face of the certificates, less the member's indebtedness and plus 6 percent. But even in these instances the 6 percent was not paid unless the surrender of the certificate occurred after July 1. As expressed by petitioner's secretary, "If a man makes an application to withdraw in April or May or June we tell him, 'If you wait to withdraw until the first of July we will pay you six months interest; otherwise you lose interest from the first of January'." This evidence, notwithstanding the use of the word "interest", indicates that both the association and the withdrawing member definitely understood that no unconditional obligation to pay, or right to receive, interest existed.

The fact that no shares of stock were ever issued is immaterial. The members furnished the capital, which enabled the association to do a gross business of nearly a million dollars a year, and, in the event of its dissolution, they clearly would be entitled to receive its assets after its liabilities were paid. According to its balance sheet at the end of the year 1935, it had assets of $314,480.13, its chief liabilities being $180,386.70 due its members, $51,047.55 set aside as surplus, undivided profits, reserve for bad debts and contingencies, and $58,950 mortgage upon its building. During the taxable years the association clearly had "earnings or profits." Most of them were distributed to the holders of the certificates. Under the circumstances we think such distributions were dividends, within the statutory definition of that term, and that the respondent did not err in disallowing petitioner's deductions of them as interest.

*Judgment will be entered under Rule 50.*